CATHERINE CORTEZ MASTO
Attorney General
CYNTHIA R. HOOVER
Nevada Bar Number 8122
CAMERON P. VANDENBERG
Nevada Bar Number 4356
Deputy Attorneys General
5420 Kietzke Lane, Suite 202
Reno, Nevada 89511
Telephone:  (775) 850-4125

*Attorneys for State of Nevada, ex. rel.,*
*Its Department of Public Safety Defendants*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| MATT MOONIN, DONN YARNALL, and ERIK LEE, | ) Case No. 3:12-cv-00353-LRH-(VPC) |
| Plaintiffs, | ) |
| v. | ) |
| STATE OF NEVADA, *ex rel.*, its DEPARTMENT OF PUBLIC SAFETY; HIGHWAY PATROL; LAS VEGAS METROPOLITAN POLICE DEPARTMENT; CITY OF LAS VEGAS; CLARK COUNTY; DOUG GILLESPIE-Sheriff; DAVE LEWIS, individually and in his official capacity; JOHN STEWART, individually and in his official capacity; KEVIN TICE, individually and in his official capacity; THOM JACKSON, individually and in his official capacity; JIM PETERSON, individually and in his official capacity; WAYNE PROSSER, individually and in his official capacity; CHARLES HAYCOX, individually and in his official capacity; BRIAN SANCHEZ, individually and in his official capacity; HUGH SHOOK, individually and in his official capacity; TODD ELLISON, individually and in his official capacity; ERVIN RAAB, individually and in his official capacity; BEN LEONARD, individually and in his official capacity; LUIS ZAPATA, individually and in his official capacity; DONALD DICE, individually and in his official capacity; CHRIS PERRY, individually and in his official capacity; PAT GALLAGHER individually and in his official capacity; GREG ZEIL; DALE JAEGER; MEL ENGLISH; TOM HIGGINS, individually and in his official capacity; MARK RISPOLI; MAKOR K9; DOES 1-9, inclusive; and CORPORATIONS 10-14, inclusive; | ) <ins>**STATE OF NEVADA DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS/ SPECIAL MOTION TO DISMISS, PURSUANT TO NEVADA REVISED STATUTES (NRS) 41.635 *et seq.***</ins> ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

*Office of the Attorney General*

i

1

Office of the Attorney General

**TABLE OF CONTENTS**

TABLE OF CONTENTS ......................................................................................... ii

TABLE OF AUTHORITIES .................................................................................... iv

MEMORANDUM OF POINTS AND AUTHORITIES....................................................1

  I.   INTRODUCTION ..............................................................................................1

  II.   ARGUMENT .....................................................................................................2

    A.   Plaintiffs' First Amended Complaint cannot withstand a Motion to Dismiss under the *Twombly-Iqbal* analysis ....................................................3

    B.   Defendants are entitled to Eleventh Amendment immunity and qualified immunity.....................................................................................................4

      1.   Eleventh Amendment Immunity........................................................4

      2.   Qualified Immunity ............................................................................4

    C.   First Claim for Relief (First Amendment) Against Tice fails ...............5

      1.   Tice's E-mail Was Not Unlawful.......................................................5

      2.   Tice is Protected by Qualified immunity...........................................8

    D.   Second Claim for Relief (First Amendment) Against Jackson Fails .................8

      1.   Claims against Jackson Lack Merit .................................................8

      2.   Jackson is protected by Qualified Immunity....................................9

    E.   Third Claim for Relief (First Amendment Retaliation) Fails ...........................10

      1.   Plaintiffs fail to identify the form, content and context of their speech..........10

      2.   Plaintiffs cannot show an adverse employment action ................................11

      3.   Plaintiffs cannot demonstrate a causal connection between their speech and the alleged adverse employment actions...........................................................12

      4.   Defendants are entitled to Qualified Immunity.............................................12

    F.   Fourth Claim for Relief (Injunctive Relief) Against NHP and Sgt. Prosser is based on Fourth Amendment claim that has been dismissed ................................12

    G.   Fifth Claim for Relief Fails to Allege Unlawful Purpose ...................................13

H.    Sixth Claim for Relief, Hostile Work Environment, Must Fail Because Whistleblowers are Not a Protected Class ............................................................ 14

I.    Seventh Claim for Relief (Failure to Train) Fails............................................. 14

  1.    Failure to Train Claim has already been dismissed ................................... 14

  2.    Plaintiffs are Entitled to Qualified Immunity................................................ 15

J.    Eighth Claim for Relief (Trespass) Fails Against Sgt. Zapata and NHP .......... 15

K.    Ninth Claim for Relief (Unjust Enrichment) is Barred by Express Written Contract.............................................................................................................. 15

L.    Tenth Claim For Relief (Oppression under Color of Office) Fails As Plaintiffs cannot bring a criminal case against Defendants .................................................... 16

M.    Leave to Amend is futile and request should be denied ............................. 17

N.    Defendants are entitled to attorney's fees .................................................. 18

SPECIAL MOTION TO DISMISS UNDER ANTI-SLAPP PROTECTIONS ................... 18

I.    Defendants Made Good Faith Communications Regarding The K9 Program .... 19

II.    Defendants Have Provided A Preponderance Of Evidence  Showing The Claims Are Based On A Good Faith Communication  Or The Right To Free Speech .......... 20

III.    Plaintiffs Cannot Show By Clear And Convincing Evidence They Are Likely To Prevail On Their Claims .......................................................................................... 22

IV.    Legislative History Supports Defendants ....................................................... 22

V.    Facts In This Case Mirror *John* Case ............................................................. 22

MOTION TO DISMISS UNDER *THE NOERR-PENNINGTON* DOCTRINE .................. 23

I.    Plaintiffs Have Not Opposed Defendants' Motion To Dismiss  Based On *Noerr-Pennington* Immunity .............................................................................................. 23

CONCLUSION ............................................................................................................ 24

Office of the Attorney General

1

**TABLE OF AUTHORITIES**

2

**Cases**

3
*Alabama v. Pugh,* 438 U.S. 781(1978) ...........................................................................4

4
*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ...........................................................................3

5
*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) ...........................................................3

6
*Brewster v. Board of Educ.,* 149 F.3d 971 (9th Cir. 1998) .............................................5

7
*Broam v. Bogan*, 320 F.3d 1023, 1026, n. 2 (9th Cir. 2003) ....................................2, 16

8
*Connick v. Myers,* 461 U.S. 138, 147 (1983) ...........................................................10, 11

9
*Dahlia v. Rodriguez*, No. 10-55978, at *28-29 (9th Cir. filed Aug. 21, 2013) (*en banc*). .11

10
*Davis v. HSBC Bank Nev., N.A.,* 691 F.3d 1152 (9th Cir. 2012). ...................................2

11
*Davis v. Scherer,* 486 U.S. 183 (1984) ...........................................................................5

12
*DCD Programs, Ltd. v. Leighton,* 833 F.2d 183 (9th Cir. 1987) ...................................17

13
*Desrochers v. City of San Bernardino,* 572 F.3d 703 (9th Cir. 2009) ......................9, 11

14
*Drussel v. Elko County School Dist.*, 2013 WL 3353531, at 5 (D. Nev. July 2, 2013) ...20

15
*Eng v. Cooley,* 552 F.3d 1062 (9th Cir. 2009). ............................................................10

16
*Garcetti v. Ceballos,* 547 U.S. 410 (2006). .........................................................7, 9, 11

17
*General Motors Corp. v. California State Bd. Of Equalization,*

18
   815 F.2d 1305 (9th Cir. 1987) ...................................................................................4

19
*Groh v. Ramirez,* 540 U.S. 551 (2004). ..........................................................................8

20
*Howey v. United States*, 481 F.2d 1187 (9th Cir. 1973) ...............................................17

21
*John v. Douglas County Sch. Dist,* 219 P.3d 1276 (Nev. 2009) .......................19, 20, 22

22
*Lee v. City of Los Angeles,* 250 F.3d 668 (9th Cir. 2001). ............................................14

23
*Malley v. Briggs,* 475 U.S. 335 (1986). ...........................................................................8

24
*Marder v. Lopez,* 450 F.3d 445 (9th Cir. 2006) .............................................................16

25
*McGlinchy v. Shell Chem Co.,* 845 F.2d 802 (9th Cir.1988) ..........................................2

26
*Nunez v. Los Angeles,* 147 F.3d 867 (9th Cir. 1998) ....................................................11

27
*Papasan v. Allain,* 478 U.S. 265 (1986) .........................................................................3

28
*Partington v. Bugliosi,* 56 F.3d 1147 (9th Cir. 1995) ....................................................17

Office of the Attorney General

Office of the Attorney General

*Pearson v. Callahan,* 555 U.S. 223 (2009). ................................................................. 5

*Pickering v. Bd. Of Ed. of Township High School Dist. 205,*

  *Will Cty.,* 391 U.S. 563 (1968). ..................................................................... 6, 9

*Saucier v. Katz,* 533 U.S. 194, 202 (2001) ............................................................. 5

*Schneider v. Cal. Dep't of Corrections,* 151 F.3d 1194, 1197 n.1 (9th Cir. 1980). 2, 13, 16

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.,* 806 F.2d 1391 (9th Cir. 1986). ...... 17

*Skilstaf, Inc., v. CVS Caremark Corp.,* 669 F.3d 1005 (9th Cir.2012)............................ 2

*Stubbs v. Strickland,* 297 P.3d 326 (Nev. 2013) ........................................................ 19

*Swierkiewicz v. Sorema,* 534 U.S. 506 (2002) ......................................................... 3

*Telesaurus VPC, LLC v. Power,* 623 F.3d 998 (9th Cir. 2010)...................................... 17

*U.S. v. 3 Parcels in La Plata County, Colo.,* 919 F.Supp. 1449 (D.Nev. 1995)............. 18

*United States v. National Treasury Employees,* 513 U.S. 454 (1995). ......................... 6

*Waters v. Churchill,* 511 U.S. 661 (1994). ........................................................ 6, 7, 9

*Whitney v. City of Milan,* 677 F.3d 292, 297 (6th Cir. 2012). ...................................... 9

*Wilkins v. City of Oakland,* 350 F.3d 949, 954 (9th Cir. 2003) ................................... 5

*Wilson v. Layne,* 526 U.S. 603, 614 (1999) .......................................................... 5

**Statutes**

42 U.S.C. § 1983 ................................................................................... 4, 15

NRS 197.200 ....................................................................................... 16

NRS 41.031 ....................................................................................... 13, 15

NRS 41.031(3) ..................................................................................... 4

NRS 41.635 ........................................................................................ 1

NRS 41.637 ........................................................................................ 23

NRS 41.637(3), ................................................................................... 19

NRS 41.637(4). ................................................................................... 20

NRS 41.660 ..................................................................................... 19, 20, 23

NRS 41.660(1). ................................................................................... 19

NRS 41.660(3)(a). ............................................................................... 21

NRS 41.660(3)(b). ..................................................................................................... 22

NRS 41.670(2) ......................................................................................................... 19

**Rules**

Fed. R. Civ. P.  7(a) .................................................................................................. 2

Fed. R. Civ. P.  7(a) ................................................................................................ 13

Fed. R. Civ. P. 12(b)(6) ................................................................................. 2, 13, 24

Fed. R. Civ. P. 12(c) ........................................................................................... 2, 24

Fed. R. Civ. P. 15(a) ............................................................................................... 17

Fed. R. Evid. 201 (b)(2) ............................................................................................ 2

United States District Court Local Rule 15-1 ......................................................... 18

United States District Court Local Rule 15-1(a). .................................................... 18

United States District Court Local Rule 7-4 ............................................................. 1

**Regulations**

NAC 281.305 .............................................................................................................. 8

Office of the Attorney General

1   Defendants STATE OF NEVADA, *ex rel.*, its DEPARTMENT OF PUBLIC

2   SAFETY, HIGHWAY PATROL, DAVE LEWIS; KEVIN TICE; THOM JACKSON; JIM

3   PETERSON; WAYNE PROSSER; CHARLES HAYCOX; BRIAN SANCHEZ; HUGH

4   SHOOK; TODD ELLISON; ERVIN RAAB; BEN LEONARD; LUIS ZAPATA; DONALD

5   DICE; PAT GALLAGHER; TOM HIGGINS; and CHRIS PERRY,[1] individually and in their

6   official capacities; by and through their attorneys, CATHERINE CORTEZ MASTO,

7   Attorney General of the State of Nevada, and CYNTHIA R. HOOVER and CAMERON

8   VANDENBERG, Deputy Attorneys General, file this Reply in support of their Motion for

9   Judgment on the Pleadings/Special Motion to Dismiss, pursuant to Nevada Revised

10   Statutes (NRS) 41.635 *et seq.* This Reply is made and based on the Memorandum of

11   Points and Authorities and all papers and pleadings on file in this action.

12   **MEMORANDUM OF POINTS AND AUTHORITIES**

13   **I.   INTRODUCTION**

14   Plaintiffs have filed a 64-page Opposition to the Motion for Judgment on the

15   Pleadings/Special Motion to Dismiss, including 17 pages of new allegations regarding

16   the state conspiracy claim.  Plaintiffs have provided no factual evidence of their new

17   unauthenticated allegations, which were not mentioned in their First Amended

18   Complaint (FAC) and therefore are not properly before this Court.  This is obviously an

19   attempt by Plaintiffs to circumvent the Court's order limiting their Amended Complaint to

20   no more than 30 pages.  (Order, #100, p. 22, lines 9-11).

21   In their lengthy Opposition, which fails to comply with the requirement set forth in

22   LR 7-4 for an index and table of authorities, Plaintiffs fail to take the opportunity to

23   provide clarity about their claims for the benefit of the Court and the Defendants.

24   Defendants request dismissal of all claims with prejudice because none of the claims

25   has merit.

26   / / /

---

27   [1] This Motion to Dismiss is not being filed on behalf of John Stewart because he was dismissed

28   from the original case and has not been served with the Amended Complaint.

1

Office of the Attorney General

## II.      ARGUMENT

Defendants request dismissal of this entire action, with prejudice, based on Plaintiffs' failure to cure the defects in their original Complaint.   Each claim is fatally flawed.

Although Plaintiffs put their "spin" on the verified facts presented in the Motion, they do not raise any genuine issue of material fact for a trier of fact to decide.   While Plaintiffs do not like the facts revealed by the official documents attached to the Motion, they have not challenged whether the documents are authentic, but instead, have offered their gloss on the facts. To that end, Plaintiffs claim that the court may consider the extrinsic evidence they offer, citing *Skilstaf, Inc., v. CVS Caremark Corp.,* 669 F.3d 1005 (9th Cir.2012).   However, *Skilstaf* discusses evidence that can be considered in a contract dispute, which is not the standard for a Motion to Dismiss.

A Fed. R. Civ. P. 12(c) motion for judgment on the pleadings utilizes the same standard as a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.   *McGlinchy v. Shell Chem Co.,* 845 F.2d 802, 810 (9th Cir.1988).

"In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." *Broam v. Bogan*, 320 F.3d 1023, 1026, n. 2 (9th Cir. 2003)*, (citing Schneider v. Cal. Dep't of Corrections,* 151 F.3d 1194, 1197 n.1 (9th Cir. 1980)) (emphasis in original).   "The focus of any Rule 12(b)(6) dismissal – both in the trial court and on appeal – is the complaint." *Schneider,* 151 F.3d at 1197 n.1.   Memoranda do not constitute pleadings under Rule 7(a). *See Id.*

In ruling on a Rule 12(b)(6) motion to dismiss, a court may, but is not required to, consider documents incorporated by reference without converting the motion into a motion for summary judgment.   *Davis v. HSBC Bank Nev., N.A.,* 691 F.3d 1152, 1159 (9th Cir. 2012). In addition to the documents attached to the Motion, Defendants request that the court take judicial notice under Fed. R. Evid. 201 (b)(2) of Exhibit 1 to the Reply,

Office of the Attorney General

1   Senate Bill 286, which recently amended Nevada's Anti-Strategic Lawsuit Against

2   Public Participation statute.   The new law went into effect on October 1, 2013.

3   Defendants explain the changes in the Special Motion to Dismiss section.

4       Throughout their Opposition, Plaintiffs allege that "evidence will show" or that a

5   fact will become apparent through depositions.  They are mistaken about the standard

6   for a Motion for Judgment on the Pleadings and a Special Motion to Dismiss under

7   Nevada's Anti-SLAPP statute and *Noerr-Pennington* immunity.   To survive such

8   motions, their FAC must allege facts sufficient to show a claim for relief that is plausible

9   on its face. This they have not done.

10       **A.    Plaintiffs' First Amended Complaint cannot withstand a Motion to
     Dismiss under the *Twombly-Iqbal* analysis**

11

12       To survive a Motion to Dismiss, "a complaint must contain sufficient factual

13   matter, accepted as true to state a claim to relief that is plausible on its face." *Ashcroft*

14   *v. Iqbal,* 556 U.S. 662, 678 (2009).   A claim has facial plausibility when the plaintiff

15   pleads factual content that allows the court to draw the reasonable inference that the

16   defendant is liable for the misconduct alleged." *Id.,* (quoting *Bell Atl. Corp. v. Twombly,*

17   550 U.S. 544, 570 (2007)).   While Rule 8 does not require "detailed factual allegations,"

18   it demands more than an unadorned, "the defendant-unlawfully-harmed–me

19   accusation." *Iqbal,* 556 U.S. at 678*, citing Twombly,* 550 U.S. at 555.

20       The allegations made by Plaintiffs, accepted as true for purposes of this Motion,

21   fail to state any legal claim that is plausible on its face.  A court is not required to "credit

22   a complaint's conclusory statements without reference to its factual content."  *Iqbal,* 556

23   U.S. at 686. Courts are not bound to accept as true a legal conclusion couched as a

24   factual allegation.  *Papasan v. Allain,* 478 U.S. 265, 286 (1986).

25       Plaintiffs claim the Court should use a "flexible evidentiary standard" for their

26   extrinsic evidence, citing *Swierkiewicz v. Sorema,* 534 U.S. 506 (2002).  However, the

27   *Swierkiewicz* case actually discusses the standard for a *prima facie* Title VII claim.  *Id.*

28

Office of the Attorney General

1   at 512.   No Title VII claim is properly before the Court and that standard does not apply

2   to this action.

3          Instead, the *Iqbal-Twombly* standard governs a Motion to Dismiss/Motion for

4   Judgment on the Pleadings.   Plaintiffs have made no showing that the allegations in

5   their FAC give rise to a reasonable inference that Defendants bear legal liability for the

6   conduct alleged.   As a matter of law, Defendants are entitled to dismissal of all claims

7   with prejudice.

8          **B.     Defendants are entitled to Eleventh Amendment immunity and**

9          **qualified immunity**

10             **1.     Eleventh Amendment Immunity**

11         Plaintiffs claim that the State of Nevada is not entitled to Eleventh Amendment

12   immunity.  (Opposition, #124, p. 14, l. 6)  Plaintiffs then recite the Eleventh Amendment

13   and assert that Defendants are not entitled to qualified immunity.   This argument is

14   confounding, at best.   The State of Nevada has not waived Eleventh Amendment

15   immunity, nor has the State of Nevada waived qualified immunity.  *See* the Second,

16   Sixth, Seventh, Eighth, Seventeenth, Twenty–Third and Thirty-First Affirmative

17   Defenses. (Answer, #108).  "The State of Nevada does not waive its immunity from suit

18   conferred by Amendment XI of the Constitution of the United States." NRS 41.031(3).

19   Even actions for injunctive relief are barred against a state or a state agency. *See*

20   *General Motors Corp. v. California State Bd. Of Equalization,* 815 F.2d 1305, 1309 (9th

21   Cir. 1987) (*citing Alabama v. Pugh,* 438 U.S. 781(1978)).

22         Although Plaintiffs argue that the Fourteenth Amendment permits the Court to

23   override the Eleventh Amendment, they cite no legal authority for that proposition.

24   (Opposition, #124, p. 18, ll. 9-25).   Defendants are entitled to Eleventh Amendment

25   immunity.

26             **2.     Qualified Immunity**

27         Defendants are entitled to a grant of qualified immunity for claims under 42

28   U.S.C. § 1983, *i.e.,* First Amendment and failure-to-train claims.   Recently the U.S.

Office of the Attorney General

1    Supreme Court held that courts do not need to consider whether officials violated a

2    plaintiff's right if it is clear that the right was not clearly established.  *See Pearson v.*

3    *Callahan,* 555 U.S. 223, 234 (2009).  For a right to be clearly established, the inquiry

4    turns on the "objective legal reasonableness of the action, assessed in the light of the

5    legal rules that were clearly established at the time it was taken." *Wilson v. Layne,* 526

6    U.S. 603, 614 (1999).  A right is clearly established if "it would  be  clear  to  a

7    reasonable  officer  that  his conduct  was  unlawful in the situation he confronted."

8    *Wilkins v. City of Oakland,* 350 F.3d 949, 954 (9th Cir. 2003) (quoting *Saucier v. Katz,*

9    533 U.S. 194, 202 (2001)).

10       Plaintiffs shoulder the burden of proving that their rights are clearly established

11   when faced with a claim of qualified immunity.  *Brewster v. Board of Educ.,* 149 F.3d

12   971, 977 (9th Cir. 1998), (citing *Davis v. Scherer,* 486 U.S. 183, 197 (1984)). Plaintiffs

13   have failed to meet this burden.  They have not discussed which rights are "clearly

14   established" under the legal framework of qualified immunity.

15       Instead, Plaintiffs pepper their Opposition (#124) with  a series of unpleaded

16   allegations, starting on page 15 and continuing to page 17, stating that "The Defendants

17   don't have the duty or right to…." concluding each sentence with a new allegation.

18   These allegations include lying, covering up illegal actions, creating a hostile work

19   environment, retaliating against whistleblowers, conducting secret meetings,

20   manipulating the contract process, along with a litany of other claims not pleaded in

21   their FAC.  Such unpleaded allegations are not properly before the Court.

22       Plaintiffs must show that the Defendants' conduct violated the constitution and

23   that the unconstitutionality of the conduct was clearly established at the time. Plaintiffs

24   have not argued this issue and Defendants are entitled to qualified immunity.

25              **C.    First Claim for Relief (First Amendment) Against Tice fails**

26                   **1.  Tice's E-mail Was Not Unlawful**

27       The U.S. Supreme Court has carefully articulated the right of the government to

28   restrict employees' speech when it acts in the role of employer.  Case law provides that

5

Office of the Attorney General

1   the government as employer has far broader powers than does the government as

2   sovereign.  *See Pickering v. Bd. Of Ed. of Township High School Dist. 205, Will Cty.,*

3   391 U.S. 563 (1968). *See also Waters v. Churchill,* 511 U.S. 661 (1994).  While most of

4   the jurisprudence regarding prior restraint involves the government as sovereign, i.e.,

5   regulation of porn shops, adult entertainment and billboards, this claim of prior restraint,

6   involving an e-mail sent by Major Kevin Tice, involves the government acting as

7   employer.

8        "When someone who is paid a salary so that she will contribute to an agency's

9   effective operations begins to do or say things that detract from the agency's effective

10  operation, the government employer must have some power to restrain her."  *Waters v.*

11  *Churchill,* 511 U.S. 661, 675 (1994).

12       "The key to First Amendment analysis of government employment decisions,

13  then, is this: The government's interest in achieving its goals as effectively and

14  efficiently as possible is elevated from a relatively subordinate interest when it acts as

15  sovereign to a significant one when it acts as employer." *Id.*

16       "The Government, when it acts as employer, possesses substantial leeway; in

17  appropriate circumstances, it may restrain speech that the Constitution would otherwise

18  protect." *United States v. National Treasury Employees,* 513 U.S. 454, 484 (1995).

19  Tice's e-mail prohibited all employees from discussing the K9 interdiction program or

20  the logistics of that program with those outside of law enforcement.  As a representative

21  of the employer, Tice had leeway in restraining speech.  The e-mail *never* prohibited

22  employees from reporting wrongdoing, constitutional violations or officer misconduct.

23  Employees at the Nevada Department of Public Safety are *required* to report

24  misconduct, or they can be disciplined.  (Exhibit 11 to Motion, #115-13, p. 268, ¶ (o)24).

25       The U.S. Supreme Court found that an employee's speech was disruptive when

26  she severely criticized the obstetrics department so that a nurse did not want to transfer

27  to the unit.  The disruptiveness of the speech was enough to outweigh whatever First

28  Amendment value her speech might have had.  *See Waters,* 511 U.S. at 680.

Office of the Attorney General

1  ""Discouraging people from coming to work for a department certainly qualifies as
2  disruption." *Id.*

3      At the time of the e-mail, two handlers had just been removed from the program.
4  The department had to select new handlers.  Moonin and Lee were unhappy that the
5  training was being changed.  Tice's e-mail would enable DPS to continue operating the
6  K9 program without disruption.

7      Tice's e-mail was narrowly focused, another requirement to pass constitutional
8  muster.  Speech restrictions must generally precisely define the speech they target.
9  *Waters,* 511 U.S. at 673.  Tice's e-mail targeted only the K9 program and its logistics.
10  The e-mail never stated that employees could not report fraud, malfeasance of seized
11  funds, unconstitutional searches, improper officer behavior, sabotage of the K9
12  program, or an intentional decision to lower K9 standards.  (FAC, #101, ¶¶ 67).   If
13  Plaintiffs felt Tice had issued an unlawful order, Plaintiffs were required to report it.
14  (Exhibit 11 to Motion, #115-3, pp. 256-7, Section 341.2.1)

15      While Plaintiffs claim they wanted to report wrongdoing but did not do so, they
16  were in violation of policy.   All DPS employees are *required* by policy to report
17  wrongdoing.   (Exhibit 16 to Motion #115-18, p. 435, ¶ (B)(2)(j); Exhibit 11 to Motion
18  #115-13, p. 268, ¶¶ 24-25).   However, their FAC alleges that they *did* report these
19  allegations. (FAC, #101, ¶¶ 25, 36, 89, 124, 125, 189).   This reporting was not
20  restrained by Tice's e-mail.

21      The statements Tice restricted were limited to the employees' official duties, not
22  their speech as private citizens.  "When public employees make statements pursuant to
23  their official duties, the employees are not speaking as citizens for First Amendment
24  purposes."  *Garcetti v. Ceballos,* 547 U.S. 410, 210 (2006).

25      For the first time in their Opposition, Plaintiffs cite to NRS 281, "Disclosure of
26  Improper Governmental Action," the state's whistleblower statute, for support of this
27  claim.   However, the statute mandates that employees file a written appeal with a
28  hearing officer of the Personnel Commission within 10 workdays after the alleged

Office of the Attorney General

1    reprisal takes place. NAC 281.305.  Plaintiffs have filed no such appeal.  Instead, they

2    attempt to cobble a whistleblower claim onto their First Amendment prior restraint claim.

3    Plaintiffs did not plead this claim in the FAC and it should not be considered for the

4    Motion to Dismiss.  Defendants are entitled to dismissal of this claim.

5                    **2. Tice is Protected by Qualified immunity**

6         Although Plaintiffs characterize Tice's e-mail as a "gag order," Tice's e-mail

7    merely echoed long-standing departmental policies that control how the agency

8    releases official information. (Exhibit 15 to Motion, #115-17, p. 412 Section (B)(3),  p.

9    413 Section C(2)(l); p. 416, Section (D)(2)(a), p. 423 Section 10(f)).  (Exhibit 16 to

10   Motion, #115-18, p. 435 (B)(2)(r)).

11        Because troopers have long operated under these policies, Tice had no way of

12   knowing that his e-mail could violate the Plaintiffs' constitutional rights.  If the law did not

13   put the officer on notice that his conduct would be clearly unlawful, then the officer is

14   entitled to qualified immunity.   Qualified immunity protects defendants regardless of

15   whether the government official's error is "a mistake of law, a mistake of fact, or a

16   mistake based on mixed questions of law and fact." *Groh v. Ramirez,* 540 U.S. 551, 567

17   (2004).   Qualified immunity protects "all but the plainly incompetent or those who

18   knowingly violate the law."  *Malley v. Briggs,* 475 U.S. 335, 341 (1986). Tice is entitled

19   to qualified immunity.

20        **D.     Second Claim for Relief (First Amendment) Against Jackson Fails**

21              **1.     Claims Against Jackson Lack Merit**

22        Plaintiffs allege that Jackson unlawfully restrained speech when he told Plaintiff

23   Moonin not to associate with Bill West.  This claim is nearly identical to the claim in the

24   Original Complaint that was dismissed by the Court.  Plaintiffs state that West knew of

25   "escalating public interest concerns regarding the current and ongoing degradation of

26   ethics and standards within the Ice/K9 program, as well as egregious civil rights

27   violations." (FAC, #101, ¶78.)   The FAC also states that the restraint on speech forbade

28   / / /

Office of the Attorney General

1   Moonin from speaking with West "in their *professional capacity* as K9 officers."

2   (emphasis added). (FAC, #101, ¶78.)

3         Plaintiffs also contend that Jackson's statement was intended to block

4   information of substantial public interest regarding constitutional violations within the K9

5   program. (FAC, #101, ¶ 84.)  Because both handlers knew of these alleged problems,

6   their comments inside the workplace amounted to nothing more than a water cooler

7   complaint session, which is not protected speech, particularly when they are speaking

8   as public employees to one another.

9         Personal communication between employees at the same level of authority does

10  not typically become speech on a matter of public concern.  *See Whitney v. City of*

11  *Milan,* 677 F.3d 292, 297 (6th Cir. 2012).  *See also Desrochers v. City of San*

12  *Bernardino,* 572 F.3d 703, 714 (9th Cir. 2009) ([a] limited audience weigh[s] against

13  claim[s] of protected speech).  "Indeed to hold otherwise here would be to create the

14  potential for litigation in every workplace gripe exchanged around the water cooler." *Id.*

15       The State of Nevada has the right to control and to prevent disruption in the

16  workplace.  See *Waters*, 511 U.S. at 681 (potential disruptiveness was enough to

17  outweigh whatever First Amendment value the speech might have had).  If every order

18  by a commanding officer becomes a cause for a First Amendment claim, the state

19  would be unable to operate its agencies.  Defendants are entitled to dismissal of this

20  claim with prejudice.

21             **2.  Jackson is Protected by Qualified Immunity**

22       The *Pickering* balancing test requires the court to weigh the interests of a citizen

23  in commenting on matters of public concern and the interest of the State in promoting

24  the efficiency of the services it performs through its employees.  *See Pickering,* 391

25  U.S. at 568.  *Pickering* balancing applies to speech made "as a citizen on a matter of

26  public concern." *Garcetti v. Ceballos,* 547 U.S. 410, 418 (2006).  In the case of

27  Jackson's prohibition, there is no evidence that co-workers were acting as private

28  citizens discussing matters of public concern when they were in the *workplace in their*

Office of the Attorney General

*professional capacities* discussing their jobs.   If two employees are disrupting the workplace, the state can impose restrictions to limit the disruption.  Jackson is entitled to a grant of qualified immunity and this claim must be dismissed with prejudice.

### E.   Third Claim for Relief (First Amendment Retaliation) Fails

#### 1.  Plaintiffs fail to identify the form, content and context of their speech

Plaintiffs baldly assert that they have "sufficiently showed how they engaged in protected speech (i.e., attempting to disclose improper and illegal actions, a grave matter of public concern)." (Opposition, #124, p. 25, ll. 23 to 25).[2]  However, they fail to identify the form, content and context of that alleged speech.  Such vague allegations as "discussing numerous areas of public and community concerns" do not explain what was said, when it was said, or to whom it was said.  Plaintiffs have failed to identify the "form and context" of the speech at issue, making it impossible to discern which speech gave rise to which claims of retaliation.  *See Connick v. Myers,* 461 U.S. 138, 147 (1983) (whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record).  Vague and conclusory statements alleging that they spoke on matters of public concern do not meet this test.

Plaintiffs also cannot show they spoke as private citizens.  Plaintiffs alleged they asked their supervisors about forfeiture funds. (FAC,  #101 ¶ 23).  They also allege that Lee reported Fourth Amendment violations to Defendant Lewis. (FAC, #101 ¶ 25).  However, if Lee noticed unconstitutional searches or improper officer behavior, he was required to report that activity as part of his job. (Exhibit 16 to Motion #115-18, p. 435, ¶ (B)(2)(j); Exhibit 11 to Motion #115-13, p. 268, ¶¶ 24-25).

---

[2] The Ninth Circuit test for evaluating a First Amendment retaliation claim by a government employee considers five factors: (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech." *Eng v. Cooley,* 552 F.3d 1062, 1070 (9th Cir. 2009).

Office of the Attorney General

1   "[W]hether or not the employee confined his communications to his chain of

2   command is a relevant, if not necessarily dispositive, factor in determining whether he

3   spoke pursuant to his official duties."  *Dahlia v. Rodriguez*, No. 10-55978, at *28-29 (9th

4   Cir. filed Aug. 21, 2013) (*en banc*).  In this latest case from the Ninth Circuit, when a

5   public employee raises complaints up the chain of command at his workplace, that

6   speech is undertaken in the course of performing his job, and is not normally protected

7   speech under the holding in *Garcetti*.  *Id. at 29*.  *Dahlia* also requires the court to look at

8   the subject matter of the communication and whether the employee spoke in

9   contravention to his superior's orders.  Plaintiffs state that they discussed "numerous

10   areas of public and community concern." (FAC, #101, p. 13, ¶ 89).  Plaintiffs then

11   provide a litany of conclusory statements they claim to have made, the same allegations

12   made in the Original Complaint (#1 ¶ 387).

13   In dismissing the Original Complaint's First Amendment retaliation claim, which is

14   nearly identical to this claim, the Court ruled that "Plaintiffs' retaliation claim fails to

15   identify the "form and context" of the speech at issue. . . rendering it impossible to

16   discern which speech gave rise to which acts of retaliation."  (Order, #100, p. 15, ll. 9-

17   11.) (citation omitted). This claim suffers from the exact same defect.  In addition, the

18   court must look at what the employees actually said, "not what they say they said after

19   the fact."  *See Desrochers v. San Bernardino,* 572 F.3d 703, 711 (9th Cir. 2009).

20   "Merely cataloguing a strained working relationship with a supervisor does not

21   necessarily allege 'actual or potential wrongdoing or breach of public trust.'"

22   *Desrochers*, 572 F. 3d n. 8, citing *Connick,* 461 U.S. at 148.

23   Defendants are entitled to dismissal of this claim, with prejudice.

24   **2.    Plaintiffs cannot show an adverse employment action**

25   Plaintiffs have failed to allege a valid adverse employment action that is

26   reasonably likely to deter protected speech.  The Ninth Circuit has held that bad-

27   mouthing and verbal threats are insufficient to establish an adverse employment action.

28   *Nunez v. Los Angeles,* 147 F.3d 867, 875 (9th Cir. 1998).  "It would be the height of

Office of the Attorney General

1   irony, indeed, if mere speech in response to speech, could constitute a First

2   Amendment violation." *Id*.

3          Plaintiffs have listed each and every action of command staff as "adverse

4   employment" actions, including statements, failure to grant their requests, statements

5   criticizing their work, e-mails, and failure to discipline other officers.  These acts simply

6   do not constitute adverse employment actions under the law.  Defendants are entitled to

7   dismissal of this claim.

8                     **3.      Plaintiffs cannot demonstrate a causal connection between**
                      **their speech and the alleged adverse employment actions**
9

10         Plaintiffs have not demonstrated that there is a causal connection between any of

11  their alleged speech and the alleged adverse employment actions.  Defendants are

12  entitled to dismissal of this claim, with prejudice.

13                    **4.      Defendants are entitled to Qualified Immunity**

14         Plaintiffs have failed to make out a *prima facie* case of First Amendment

15  retaliation because they cannot show they spoke on a matter of public concern, that

16  they made the speech as private citizens, or that any of their speech resulted in a

17  retaliatory, adverse employment action.  Because Defendants could not know that their

18  conduct violated a constitutional right, they are entitled to qualified immunity on the First

19  Amendment retaliation claim.

20                    **F.      Fourth Claim for Relief (Injunctive Relief) Against NHP and Sgt.**
                      **Prosser is based on Fourth Amendment claim that has been dismissed**
21

22         "Plaintiffs request injunctive relief from the actions of Defendants," (FAC, #101, ¶

23  134), claiming that Defendants, acting under color of state law, "plac[ed] each of the

24  Plaintiffs and other potential officers in a position of forced violation of the fourth

25  amendment (sic) protections provided to the citizens."   (FAC, #101, ¶ 133, and

26  Opposition, #124, p. 28, ll. 7-8).  Plaintiffs further claim that "Defendants also fostered

27

28

Office of the Attorney General

1  an environment by which its employees would be in violation of NRS 197.200...."

2  (Opposition, #124, p. 28, ll. 20-21).[3]

3       Plaintiffs' claim for injunctive relief is brought against the NHP and Sgt. Prosser;

4  however, many of the paragraphs devoted to this claim for relief pertain to Las Vegas

5  Metropolitan Police Department and/or Sgt. Zeil, both of whom have been dismissed

6  from this action.  NHP is immune from suit.  NRS 41.031.  (*See also* Order, #100, p. 6, l.

7  13).  That leaves Sgt. Prosser, who is sued in both his individual and official capacities.

8       Plaintiff Yarnall is no longer an independent contractor of the State and neither

9  Plaintiff Moonin nor Plaintiff Lee is assigned to the DPS K9 program.  (Exhibit 13 to

10  Motion, #115-15; FAC, #101, ¶¶ 48-52.)  The DPS K9 program is the only context in

11  which Plaintiffs' allegations of Fourth Amendment violations arise.  Therefore, even if

12  their claim for injunctive relief against Sgt. Prosser had any logical basis in law, it is

13  moot.  And, as has already been repeatedly argued by Defendants, Plaintiffs lack

14  standing to seek relief on behalf of others, i.e., "other potential officers."  Accordingly,

15  Plaintiffs' claim for injunctive relief should be dismissed with prejudice.

16      **G.**    **Fifth Claim for Relief (State Civil Conspiracy) Fails to Allege Unlawful**

17           **Purpose**

18       In an attempt to save their state civil conspiracy claim, Plaintiffs allege 17 pages

19  of new "facts" in their Opposition, adding accusations of "offering a reward for an

20  appointment" and false report by a public officer, both criminal activities. (Opposition, #

21  124, pp. 29-45).  However, the FAC makes no mention of any of this and the Court must

22  consider only the Complaint in ruling on a Motion for Judgment on the Pleadings.

23       The focus of any Rule 12(b)(6) dismissal – both in the trial court and on appeal –

24  is the complaint.  *Schneider,* 151 F.3d at 1197 n.1.  Memoranda do not constitute

25  pleadings under Rule 7(a). *See Id.*

26  / / /

27

28       [3] The merits, or lack thereof, of Plaintiffs' separate claim for relief pursuant to NRS 197.200 are addressed below.

13

Office of the Attorney General

1    The conspiracy claim alleged in the FAC is virtually identical to the conspiracy

2    claim dismissed by the Court in the original Complaint.   This Court dismissed the

3    original state civil conspiracy claim because it did not allege an unlawful action.

4    Because the claims are the same, Plaintiffs again have failed to plead conspiracy with

5    an unlawful objective. Defendants are entitled to dismissal of this claim, with prejudice.

6    **H.    Sixth Claim for Relief, Hostile Work Environment, Must Fail Because
        Whistleblowers are Not a Protected Class**

7

8    Despite Plaintiffs' claim to the contrary, whistleblowers are not a protected class

9    under Title VII.   Plaintiffs make this allegation in their Opposition (#124, p. 46, ll. 1-2),

10   but cite no case law in support of it.   In addition, they have not alleged a whistleblower

11   claim.

12   Because Plaintiffs cannot show they belong to a protected class, and because

13   they have not filed a charge with the Equal Employment Opportunity Commission, they

14   cannot bring a claim for hostile work environment.   This claim must be dismissed with

15   prejudice as amendment would be futile.

16   **I.     Seventh Claim for Relief (Failure to Train) Fails**

17   **1.  Failure to Train Claim has already been dismissed**

18   To establish liability for failure to train, plaintiffs must initially show that *they* were

19   deprived of a constitutional right.  *Lee v. City of Los Angeles,* 250 F.3d 668, 681 (9th Cir.

20   2001).  Plaintiffs cannot make such a showing.  Plaintiffs cite no authority for the notion

21   that unpopular program changes made by management constitute constitutional

22   deprivations.  Plaintiffs' conclusory allegations of "widespread, routine unconstitutional

23   searches" against non-party, unidentified citizens cannot satisfy the initial showing of an

24   injury.  Therefore, Plaintiffs' failure-to-train claim fails.

25   Furthermore, Plaintiffs have brought their failure–to-train claim against the NHP,

26   a state agency entitled to 11th Amendment immunity.  Plaintiffs claim "Defense Counsel

27   is taking this argument as yet another opportunity to defend the State by way [sic] not

28   being able to be sued as the State is not a 'person' pursuant to the provisions of 42

14

Office of the Attorney General

1  U.S.C. § 1983." (Opposition, #124, pp. 46-47). However, the Court has already found

2  that NHP is immune from suit in this case, citing NRS 41.031. (Order, #100, p. 6, ll. 13-

3  14.) Plaintiffs' failure-to-train claim should again be dismissed, with prejudice.

4  **2.  Plaintiffs are entitled to Qualified Immunity**

5  Plaintiffs' failure-to-train claim alleges that the Department of Public Safety

6  changed the training program. Plaintiffs claim they had a "federally protected right" in

7  the original training program. Defendants had no notice that changing the training

8  program would affect the "federally protected rights" of Plaintiffs in the old training

9  program. Such a "right" is not clearly established, and Plaintiffs have cited no authority

10  to the contrary. Defendants are entitled to qualified immunity on this claim.

11  **J.  Eighth Claim for Relief (Trespass) Fails Against Sgt. Zapata and NHP**

12  Plaintiffs' trespass claim fails to identify who allegedly entered Lee's land. They

13  simply claim that "Defendants" or "officers" entered it. (See FAC, #101, ¶ 197, and

14  Opposition, #124, p. 48, ll. 9 & 26.) Plaintiffs cite numerous conversations Plaintiff Lee

15  had with Defendant Sgt. Zapata, (see FAC, #101, ¶¶ 55 & 56, and Exhibit 14 to Motion,

16  #115-16, pp. 398-402, 404-409), but there is no allegation that Sgt. Zapata himself

17  entered Plaintiff Lee's property without authorization, removed the kennel, and

18  damaged Lee's property. On the contrary, the facts show that Sgt. Zapata was present

19  at Lee's home *at Lee's request*. (See Exhibit 14 to Motion, #115-16, p. 405.)

20  Accordingly, Plaintiffs' Eighth Claim for Relief for trespass should be dismissed as to

21  Sgt. Zapata.

22  The Court has already found that NHP is immune from suit in this case, citing

23  NRS 41.031. (Order, #100, p. 6, ll. 13-14). Therefore, Plaintiffs' trespass claim must

24  also be dismissed as to NHP.

25

26  **K.  Ninth Claim for Relief (Unjust Enrichment) is Barred by Express Written Contract**

27  Without refuting the arguments made by Defendants regarding Plaintiffs' unjust

28  enrichment claim, Plaintiffs allege in their Opposition approximately eight pages of new,

Office of the Attorney General

1   mostly irrelevant, "facts" that were not alleged in their original complaint or in their FAC.

2   (*See* Opposition, #124, pp. 49-57).  As argued above, Plaintiffs cannot bring forth new

3   allegations in an opposition to a motion to dismiss. *Broam*, 320 F.3d at 1026, n. 2;

4   *Schneider,* 151 F.3d at 1197 n.1. The same is true of Plaintiffs' Exhibit 1 to their

5   Opposition, (#124-1), which is a document that was not  referenced  in  the  complaint.

6   Plaintiffs  have  not  requested that the Court take judicial notice of the document, and

7   Defendants question its authenticity.  Accordingly, Exhibit 1 should be stricken.  *See*

8   *Marder v. Lopez,* 450 F.3d 445, 448 (9th Cir. 2006).

9        Second, the majority of Plaintiffs' allegations are against Lt. O'Rourke, who is not

10   a Defendant in this action.  Therefore, all allegations referencing Lt. O'Rourke should be

11   dismissed as irrelevant.

12        Third, over half of the pages of Plaintiffs' new "facts" pertain to incidents that

13   allegedly occurred from 2008 through the middle of 2010, all of which are barred by the

14   statute of limitations.   Plaintiffs' original complaint was filed on June 26, 2012.

15   Therefore, all allegations of incidents occurring prior to June 26, 2010, are barred by the

16   statute of limitations and should be dismissed.

17        Finally, Plaintiffs have failed to disprove that, at all relevant times, Plaintiff Yarnall

18   was under a valid, written, express contract for services with the State.  The contracts

19   and amendments speak for themselves.  (Exhibit 13 to Motion, #115-15).  Therefore,

20   any claim Yarnall has against the State of Nevada for nonpayment for services

21   rendered constitutes a contract dispute and cannot be brought as an unjust enrichment

22   claim against a state agency in federal court.

23

24   **L.     Tenth Claim For Relief (Oppression under Color of Office) Fails As Plaintiffs cannot bring a criminal case against Defendants**

25        Plaintiffs have alleged "oppression under color of office" under NRS 197.200,

26   asserting a criminal action against Defendants.  Plaintiffs are not prosecutors and have

27   no standing to charge Defendants with a crime.  In their Opposition, Plaintiffs state that

28   "Justice demands that Defendants' (sic) be prohibited from having this matter dismissed

Office of the Attorney General

1   on a technicality when the very backbone of the Constitutional violations set out in FAC,

2   #101, ¶ 210 exist." (Opposition, #124, p. 57, ll. 11-13).  Standing is not a "technicality," it

3   is a legal requirement for bringing a claim to federal court.[4]  Plaintiffs also argue about

4   an "enterprise," apparently overlooking the fact that they did not re-plead their RICO

5   claim, which has already been dismissed by the court.   Defendants are entitled to

6   dismissal of this claim.

7          **M.     Leave to Amend is futile and request should be denied**

8          Plaintiffs request leave to cure any and all deficiencies in their First Amended

9   Complaint "if the Court finds any deficiencies in Plaintiff's [sic] Complaint."  (Opposition,

10  #124, p. 63, ll. 25-26).  Plaintiffs had the opportunity to cure the defects in their original

11  Complaint with the FAC.  They failed to take advantage of this opportunity.  It is highly

12  unlikely that an amendment would cure the deficiencies in their FAC as many of the

13  claims are barred by the statute of limitations, Eleventh Amendment immunity and

14  qualified immunity.  When a deficiency cannot be overcome by an amendment, or when

15  it would be futile to amend, a motion for leave to amend is properly denied.

16         "Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend 'shall

17  be freely given when justice so requires.'   Although, …there is a policy that favors

18  allowing parties to amend their pleadings, *Howey v. United States*, 481 F.2d 1187, 1190

19  (9th Cir. 1973), a district court may properly deny such a motion if it would be futile to do

20  so."  *Partington v. Bugliosi*, 56 F.3d 1147, 1162 (9th Cir. 1995) (citing *DCD Programs,*

21  *Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987)).

22         "A district court may deny a plaintiff leave to amend if it determines that

23  'allegation of other facts consistent with the challenged pleading could not possibly cure

24  the deficiency.' *Telesaurus VPC, LLC v. Power,* 623 F.3d 998, 1003 (9th Cir. 2010)

25  (*citing Schreiber Distrib. Co. v.  Serv-Well Furniture Co.,*  806 F.2d  1391, 1401  (9th Cir.

26  / / /

27  _____

28         [4] Standing is defined as "A party's right to make a legal claim or seek judicial enforcement of a
duty or right." BLACK'S LAW DICTIONARY 1413 (7th ed. 1999)

Office of the Attorney General

1   1986)).  Such is the case with this action.   Further amendment will not cure the

2   deficiencies with this Amended Complaint

3        Furthermore, Plaintiffs have failed to comply with the terms of Local Rule 15-1.

4   LR 15-1 requires the litigant moving for leave to amend to submit the proposed

5   amended pleading along with the motion to amend.   LR 15-1(a).   No proposed

6   amended pleading accompanies Plaintiffs' request for leave to amend.   This failure

7   alone requires the Court to deny Plaintiffs' request.   *U.S. v. 3 Parcels in La Plata*

8   *County, Colo.*, 919 F.Supp. 1449, 1457 (D.Nev. 1995).

9        Plaintiffs are trying to steal home without ever running to first or second base, by

10  letting the Court determine if the claims have merit and then attempting to fix the issues

11  afterward.   Plaintiffs should have made this determination before filing their First

12  Amended Complaint.

13       **N.   Defendants are entitled to attorney's fees**

14       Defendants are entitled to reasonable attorney's fees and costs for defending this

15  action.  Not only is the action a Strategic Lawsuit Against Public Participation, several of

16  the claims are frivolous as evidenced by the fact that Plaintiffs merely reiterate several

17  of the claims asserted in their original Complaint, claims that have already been

18  dismissed by the Court.   Many of the claims cannot be brought against the state in

19  federal court due to Eleventh Amendment immunity.   Defendants request attorney's

20  fees and costs for having to defend this meritless action.

21       **SPECIAL MOTION TO DISMISS UNDER ANTI-SLAPP PROTECTIONS**
     **OF NRS 41.635 *et seq.***
22

23       In late May 2013, Senate Bill 286 was enacted and approved by the Governor,

24  amending NRS 41.635 *et seq.*  The bill became effective on October 1, 2013.  Under

25  both the new and the former statutes, Defendants have met all the requirements to

26  prevail on their Special Motion to Dismiss under the Anti-Strategic Lawsuit Against

27  Public Participation (Anti-SLAPP) protections of NRS 41.635.

28

Office of the Attorney General

**I.     DEFENDANTS MADE GOOD FAITH COMMUNICATIONS REGARDING THE K9 PROGRAM**

> A SLAPP suit is a meritless lawsuit that a party initiates primarily to chill a defendant's exercise of his or her First Amendment free speech rights. _John v. Douglas County School District,_ 125 Nev. 746, 752, 219 P.3d 1276, 1280 (2009). When a plaintiff files a SLAPP suit against a defendant, Nevada's anti-SLAPP statute allows the defendant to file a special motion to dismiss in response to the action. NRS 41.660(1). NRS 41.670(2) further provides, 'If the court grants a special motion to dismiss filed pursuant to NRS 41.660 ... [t]he person against whom the action is brought may bring a separate action to recover: (a) [c]ompensatory damages; (b) [p]unitive damages; and (c) [a]ttorney's fees and costs of bringing the separate action.'

_Stubbs v. Strickland,_ 297 P.3d 326 (Nev. 2013).

Defendant Perry's comments to the Legislature and to the Governor's Office led to changes in the K9 program, which is the crux of this lawsuit.  Had Perry not revised the K9 program through his comments to the Legislature and the report to the Governor, Plaintiffs would not have filed this action.  That is the sole reason they filed this action. Plaintiffs complain repeatedly that Perry was out to destroy the K9 program through the statements he made to the Legislature and the Governor's Office.  Plaintiffs have filed suit in retaliation for that speech. In their Opposition, Plaintiffs attack Perry's comments to the Legislature and the facts in the report to the Governor.  (Opposition, #124, p. 5, ll. 9-13, (attempting to rely on Plaintiffs' first response to the original Motion to Dismiss); p. 6, ll. 23, to p. 7, l. 18; p. 7, l. 22, to p. 8, l. 18; p. 9, ll. 5-16).

Plaintiffs claim in their Opposition that Nevada's Anti-SLAPP statute does not apply to Defendants' activity, but they overlook a key section of the statute that defines a good faith communication in furtherance of the right to petition as any:

> 3. Written or oral statement made in direct connection with an issue under consideration by a legislative, executive or judicial body, or any other official proceeding authorized by law,
> ~ which is truthful or is made without knowledge of its falsehood.

NRS 41.637(3).

Office of the Attorney General

1     In addition, S.B. 286, enacted on May 27, 2013, when it was signed by the

2 Governor, added a fourth section to the definition of good faith communication: "4.

3 Communication made in direct connection with an issue of public interest in a place

4 open to the public or in a public forum."  NRS 41.637(4). *See* Exhibit 1, S.B. 286, as

5 enrolled.  Perry's comments to the Legislative committees were made in public forum

6 and were made in direct connection with an issue of public interest.

7     Defendants' statements and activities meet the standard under both versions of

8 the statute.  As explained at length in the Motion, Defendant Chris Perry testified to the

9 Nevada State Legislature regarding problems with the K9 program, including excessive

10 overtime and expenditures.  He also prepared a comprehensive report regarding the K9

11 program for the Governor's office, the *Executive* office.  (Exhibit 3 to Motion, #115-3 to

12 115-5). His communications led to changes in the K9 program to make it accountable to

13 the Legislature and to state taxpayers.  Plaintiffs are disgruntled that the K9 program

14 was changed, that overtime and expenditures were controlled, and that the training was

15 placed under local law enforcement.  Moonin and Lee quit the K9 program and Yarnall's

16 expensive contract was not renewed.

17     Plaintiffs have requested to be reinstated to the K9 program, which further

18 demonstrates that this case has been filed to chill Defendants' speech about the

19 problems they caused so they can return to the program.  Plaintiffs' FAC should be

20 stricken under Nevada's Anti-SLAPP statute.

21

22   **II.   DEFENDANTS HAVE PROVIDED A PREPONDERANCE OF EVIDENCE SHOWING THE CLAIMS ARE BASED ON A GOOD FAITH COMMUNICATION OR THE RIGHT TO FREE SPEECH**

23

24     A party moving to dismiss under NRS 41.660 "must first make a threshold

25 showing that the lawsuit is based on 'good faith communication in furtherance of the

26 right to petition the government."  *Drussel v. Elko County School Dist.*, 2013 WL

27 3353531, at 5 (D. Nev. July 2, 2013) (citing *John v. Douglas County Sch. Dist*, 219

28 P.3d 1276, 1282 (Nev. 2009)).  Defendants have made more than a threshold showing

Office of the Attorney General

1    that the lawsuit is based on good faith communication in furtherance of the right to

2    petition the government, by providing the communications to both the legislature and to

3    the governor's office, documents that detail the mismanagement and abuse of the K9

4    program, and problems with the pubic fisc.

5         However, while a threshold showing was all that was required under the old

6    statute, S.B. 286 has modified that requirement.  Now, instead of treating the motion as

7    one for summary judgment, S.B. 286 requires that the court "[d]etermine whether the

8    moving party has established, by a preponderance of the evidence, that the claim is

9    based upon a good faith communication in furtherance of the right to petition or the right

10   to free speech in direct connection with an issue of public concern."  NRS 41.660(3)(a).

11   Exhibit 1, S.B. 286 as enacted.

12        Defendants have provided a preponderance of evidence in that regard:  The

13   communication to the legislative bodies, outlining how K9 management did not adhere

14   to the statements that were made to the legislature by the originators of the program,

15   communication regarding the overtime that was not authorized, the K9 vehicles that

16   were equipped with expensive wheels, sway bars, exhaust systems, and GPS.  Perry

17   also communicated in writing with the Governor's Office regarding the issues with the

18   K9 program, including overtime, lack of supervision, lack of accountability, high amounts

19   of overtime with few results, failure to assign canines to existing troopers, no work

20   performance standards for handlers, no monthly reports, troopers working at fund-

21   raising events rather than working the highways.  (Exhibit 3 to Motion, #115-3 pp. 18-

22   26).    The lack of field work for the dogs affected the sustainability of the program.

23   (Exhibit 3 to Motion, #115-3 p. 21).  The claims arose only because Plaintiffs believe

24   Perry was interfering and sabotaging the K9 program and they want to punish him for

25   that action, a hallmark of SLAPP litigation.   Defendants have demonstrated by a

26   preponderance of the evidence that these claims arise from their protected activity.

27   / / /

28   / / /

Office of the Attorney General

### III.   PLAINTIFFS CANNOT SHOW BY CLEAR AND CONVINCING EVIDENCE THEY ARE LIKELY TO PREVAIL ON THEIR CLAIMS

The amended statute requires that once the Defendants have met their burden, the Plaintiffs must establish by "clear and convincing evidence a probability of prevailing" on their claims. NRS 41.660(3)(b).  Exhibit 1.

This Plaintiffs cannot do.  Each and every claim has not only legal but factual deficiencies, which provides further proof that their action is a SLAPP suit, intended to chill the speech of Defendants so Plaintiffs can return to their former positions in the K9 unit.   (FAC, #101 p. 30, ll. 18, requesting an injunction to return them to positions in the K9 program).  Each claim is missing key legal elements that must be present to survive a Motion for Judgment on the Pleadings. Other claims are barred by Eleventh Amendment immunity.  Plaintiffs' claims have fatal legal deficiencies, outlined *supra,* which mandate dismissal of all claims with prejudice.

The claims for First Amendment, state civil conspiracy, injunctive relief, hostile work environment, failure to train, trespass, unjust enrichment and oppression under color of office, are missing required legal elements and cannot withstand a motion to dismiss.   Defendants are entitled to dismissal of all claims based on Anti-SLAPP immunity.

### IV.   LEGISLATIVE HISTORY SUPPORTS DEFENDANTS

Plaintiffs attempt to assert that Defendants did not petition the government and they cite legislative history, overlooking the actual wording of the statute. They overlook the fact that Defendants petitioned both the legislature and the executive branch of government regarding the K9 program.

### V.   FACTS IN THIS CASE MIRROR *JOHN* CASE

While the Plaintiffs claim that this case is not similar to the *John v. Douglas County* case, they are mistaken.  *See John,* 219 P.3d 1276.  In *John,* Douglas County brought a special motion to dismiss because the Plaintiff sued his employer and individuals who provided information to the school district during their investigation of

22

Office of the Attorney General

1   the plaintiff.  In this case, Plaintiffs have sued their employer (State of Nevada), and the

2   two individuals who provided information to the legislature and the Governor's office

3   about the mismanagement of the K9 program.  In *John,* the school officials' actions

4   were protected communications.  In this case, Perry's written and oral communications

5   are protected under NRS 41.637 and 41.660.  Perry was investigating how the K9

6   program was being operated and after that investigation, culminating in the report to the

7   Governor, the K9 program was changed to make it cost-efficient and effective.

8   Defendants are entitled to dismissal of the Complaint, which is nothing more than a

9   Strategic Lawsuit Against Public Participation.

10           **MOTION TO DISMISS UNDER *THE NOERR-PENNINGTON* DOCTRINE**

11   **I.     PLAINTIFFS HAVE NOT OPPOSED DEFENDANTS' MOTION TO DISMISS**
12   **       BASED ON *NOERR-PENNINGTON* IMMUNITY**

13           Plaintiffs have failed to oppose the Motion to Dismiss under *Noerr-Pennington*.

14   "Failure of an opposing party to file points and authorities in response to any motion,

15   shall constitute a consent to the granting of the motion."  LR 7-2 (d).  Plaintiffs have thus

16   conceded this issue and Defendants are entitled to dismissal of all federal claims, with

17   prejudice, under the *Noerr-Pennington* doctrine.

18           Instead, Plaintiffs argue there is "a plethora of factual bases on which their

19   allegations are based and which deserve to be heard."  (Opposition, #134 p. 63, ll. 18-

20   19).  The standard, however, for a *Noerr-Pennington* doctrine dismissal does not rely on

21   allegations that deserve to be heard.    *Noerr-Pennington* provides that those who

22   petition any department of government are generally immune from statutory liability for

23   such conduct.

24           There is more than ample evidence to show that the Defendants petitioned the

25   government.   Plaintiffs' FAC is an attempt to silence First Amendment activity of

26   Defendants in furtherance of their petitioning right.  Defendants are entitled to dismissal

27   of all claims due to *Noerr-Pennington* immunity.

28   / / /

Office of the Attorney General

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CONCLUSION**

Plaintiffs have shown no set of facts that entitle them to relief.  Defendants have demonstrated that none of Plaintiffs' claims have legal merit. Based on Fed. R. Civ. P. 12(b)(6) or in the alternative, Fed. R. Civ. P. 12(c), the *Noerr-Pennington* doctrine, Nevada's Anti-SLAPP statute, Eleventh Amendment immunity, and qualified immunity, Defendants are entitled to dismissal of all claims, with prejudice.    Defendants are also entitled to reasonable attorney's fees and costs to compensate them for the expense of responding to the SLAPP suit and for bringing these motions.

DATED this 1st day of October, 2013.

CATHERINE CORTEZ MASTO
Attorney General

*/s/ Cynthia R. Hoover*
By: _____
CYNTHIA R. HOOVER
Deputy Attorney General
Nevada Bar No. 8122
CAMERON P. VANDENBERG
Deputy Attorney General
Nevada Bar No. 4356

1
**CERTIFICATE OF SERVICE**

2
The undersigned hereby certifies that she is an employee in the office of the

3
Attorney General and is a person of such age and discretion as to be competent to

4
serve papers.

5
That on October 1, 2013, she filed a true and accurate copy of the foregoing to

6
the United States District Court CM/ECF Electronic Filing, who will e-serve the following

7
addressees:

8
KENNETH J. MCKENNA, ESQ.
544 W. FIRST STREET

9
RENO, NV 89503
megan@kenmckennalaw.com

10

11
*Attorney for Plaintiffs*

12
LYSSA S. ANDERSON, ESQ.
KAEMPFER CROWELL RENSHAW
  GRONAUER & FIORENTINO

13
8345 WEST SUNSET ROAD, SUITE 250
LAS VEGAS, NV  89113

14
landerson@kcnvlaw.com

15
*Attorneys for Las Vegas Metro Police Department, Doug Gillespie,*
*Mel English, Dale Jaeger, and Greg Ziel*

16

17
TYLER J. WATSON, ESQ.
KRAVITZ, SCHNITZER, SLOANE & JOHNSON, CHTD.
8985 S. EASTERN AVE., SUITE 200

18
LAS VEGAS, NV  89123
twatson@kssattorneys.com

19

20
*Attorneys for Defendants Mark Rispoli and Makor K-9*

21
And she delivered a true and accurate courtesy copy to Reno-Carson Messenger
Service with instructions for hand-delivery to the Chambers of:

22
THE HONORABLE LARRY R. HICKS
UNITED STATES DISTRICT COURT

23
DISTRICT OF NEVADA
400 S. VIRGINIA STREET

24
RENO, NV  89501

25

26
/s/ Shirley J. Susich

27
An Employee of the Office of the
Attorney General

28

Office of the Attorney General