UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \* \* \*

| | |
|---|---|
| MATT MOONIN; DONN YARNALL; and ERIK LEE, <br><br>            Plaintiffs, <br><br> vs. <br><br> STATE OF NEVADA, ex rel. its DEPARTMENT OF PUBLIC SAFETY HIGHWAY PATROL; et al, <br><br>            Defendants. | CASE NO. 3:12-cv-000353-LRH-VPC <br><br> ORDER |

Before the Court is Plaintiffs Matt Moonin, Donn Yarnall, and Erik Lee's (collectively "Plaintiffs") Motion for Partial Summary Judgment. Doc. #157.[1] Defendants Kevin Tice and Luis Zapata (collectively "Defendants") filed a Response (Doc. #161), to which Plaintiffs replied (Doc. #166). Also before the Court is Defendants' Motion for Summary Judgment. Doc. #159. Plaintiffs filed a Response (Doc. #171), to which Defendants replied (Doc. #172).

**I.      Facts and Procedural Background**

This dispute concerns the creation and implementation of a canine drug detection unit ("K9 program") within the Nevada Highway Patrol ("NHP"). Plaintiffs filed their original Complaint on June 26, 2012. Doc. #1. After extensive briefing on Defendants' various Motions to Dismiss, the Court entered an Order on April 15, 2013, dismissing ten of the thirteen claims in Plaintiffs' original Complaint. Doc. #100. Thereafter, on May 3, 2013, Plaintiffs filed a First Amended Complaint ("FAC"), whereby they alleged ten claims, three of which were new. Doc.

---

[1] Refers to the Court's docket number.

#101. In the FAC, plaintiffs omitted three defamation claims from the original complaint. *Id.* On June 7, 2013, the Court dismissed several defendants. Doc. #113; Doc. #114. On motion of the Defendants, the Court on January 17, 2014, dismissed many of Plaintiffs' remaining claims except the First Amendment prior restraint claim against Kevin Tice and the trespass claim against Luis Zapata. Doc. #129. On August 13, 2014, Plaintiffs filed a motion for leave to file a Second Amended Complaint ("SAC") in order to reinstate three defamation claims that Plaintiffs omitted from the FAC. Doc. #134. The Magistrate Judge denied Plaintiffs' Motion on September 10, 2014. Doc. #138.

Plaintiffs are officers who were formerly involved in the K9 program. Plaintiffs Lee and Moonin are former NHP K9 troopers, and Plaintiff Yarnall was the architect of the NHP's K9 program.[2] Defendants are NHP officials. Plaintiffs allege that NHP administrators were against the K9 program from its inception and worked to undermine and marginalize it, resulting in routine Fourth Amendment violations. Plaintiffs claim that NHP officials retaliated against them for objecting to the alleged mismanagement.

Despite the claimed mismanagement, the K9 program initially flourished, yielding both drug and currency seizures. Plaintiffs contend that NHP officials sought to replace high standards Yarnall implemented with lower ones. As part of this effort, NHP officials allegedly filed false complaints against Yarnall and Lee; took files from the K9 program's offices; denied the provision of necessities such as dog food; and issued orders barring dogs from the K9 program's offices.

In 2009, concerned that attempts to decentralize the program and reduce training standards had led to increased Fourth Amendment violations by K9 troopers, Lee and Moonin allege that they alerted NHP officials, but their warnings went unheeded. When, in late 2009, the NHP officials replaced the K9 program's head, the K9 troopers submitted a letter to the Director of the Department of Public Safety outlining their grievances. Plaintiffs allege that, following the submission of the letter, NHP officials eliminated the K9 troopers' ability to earn overtime, malingered with respect to renewing Yarnall's contract, and gave Moonin unnecessary tasks.

---

[2] Plaintiff Donn Yarnall passed away in early 2015. Doc. #161 at 7.

At the end of 2010, the K9 program's last high-ranking defender, the Director of the Department of Public Safety, retired. In April 2011, the new Director split the K9 program into two squads, including both NHP officers and Las Vegas Metropolitan Police Department ("LVMPD") officers. During the following summer, Plaintiffs allege that they observed a marked increase in unconstitutional searches. In particular, Moonin was alarmed at the routine practice of poking holes in packages at a FedEx sort facility so that K9 program dogs could more easily smell the packages' contents. Moonin reported this practice, but his reports did not result in any changes.

At least five televised interviews with members of NHP and LVMPD occurred over the course of late 2011 and early 2012, centering on the challenged searches and the implosion of the K9 program. Rumors spread that Moonin was the media's source. Moonin denied these rumors, but he contends that they caused him significant grief. Moonin claims that NHP and LVMPD employees ramped up their harassment, and Moonin eventually filed a complaint with NHP's Office of Professional Responsibility. Moonin also requested a transfer out of his squad, but his request was not successful.

In September 2011, the NHP's K9 troopers—including Moonin and Lee—resigned en masse from the K9 program. They cited their objections to the training methods as well as the alleged civil rights violations. Moonin and Lee were placed in lower-status positions within the NHP, where they remain.

Following Lee's resignation from the K9 program, NHP demanded the return of the NHP-owned kennel from Lee's property and scheduled troopers to remove the kennel from his home. Luis Zapata monitored the kennel removal. In the course of removing the kennel, Lee's fence had to be temporarily dismantled and a bush uprooted and replanted. When Lee's fence was damaged and the bush did not survive the winter, NHP repaired the fence and replaced the bush.

II.   **Legal Standard**

   **A. Objection to Order Denying Second Leave to Amend**

A magistrate judge's orders operate as final determinations of pretrial matters under 28

1  U.S.C. § 636(b)(1)(A) and Local Rule IB 1-3. Accordingly, a district judge may reconsider a
2  magistrate judge's order only if it is "clearly erroneous or contrary to law." 28 U.S.C.
3  § 636(b)(1)(A); Fed. R. Civ. P. 72(a); LR IB 3-1(a).

### B. Motions for Summary Judgment

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, affidavits or declarations, stipulations, admissions, and other materials in the record show that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Cnty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001). A motion for summary judgment can be complete or partial, and must identify "each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a).

The party moving for summary judgment bears the initial burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). On an issue as to which the nonmoving party has the burden of proof, however, the moving party can prevail merely by demonstrating that there is an absence of evidence to support an essential element of the non-moving party's case. *Celotex*, 477 U.S. at 323.

To successfully rebut a motion for summary judgment, the nonmoving party must point to facts supported by the record that demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Liberty Lobby*, 477 U.S. at 248. Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material

1  fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for
2  the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of
3  evidence in support of the party's position is insufficient to establish a genuine dispute; there
4  must be evidence on which a jury could reasonably find for the party. *See id.* at 252.
5  "[S]peculative and conclusory arguments do not constitute the significantly probative evidence
6  required to create a genuine issue of material fact." *Nolan v. Cleland*, 686 F.2d 806, 812 (9th Cir.
7  1982).

8  "[W]hen parties submit cross motion for summary judgment, '[e]ach motion must be
9  considered on its own merits.'" *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249
10 F.3d 1132, 1136 (9th Cir. 2001) (internal citation omitted). The Court must consider the evidence
11 presented by both parties, regardless under which motion the evidence offered. *Id.*

12 **III.   Discussion**

13 Plaintiffs object to the Magistrate Judge's Order denying second leave to amend their
14 complaint, and move for partial summary judgment on the First Amendment prior restraint claim.
15 Defendants move for summary judgment on Plaintiffs' First Amendment prior restraint claim
16 and trespass claim.

17 **A. Plaintiffs' Objection to Order Denying Second Leave to Amend**

18 Plaintiffs contend that the Magistrate Judge erred in denying their motion to amend their
19 Complaint. Plaintiffs filed a Motion for Leave to File a Second Amended Complaint in order to
20 reinstate three defamation claims that had been included in the original complaint, but that
21 Plaintiffs had omitted from the FAC. Doc. #134. The Magistrate Judge denied the Motion on
22 September 30, 2014. Doc. #138.

23 "Although Federal Rule of Civil Procedure 15(a) provides that leave to amend shall be
24 freely given when justice so requires, it is not to be granted automatically." *In re W. States*
25 *Wholesale Natural Gas Antitrust Litig. v. Oneok, Inc.*, 715 F.3d 716, 738 (9th Cir. 2013) (quoting
26 *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1387 (9th Cir. 1990)) (internal quotation marks
27 omitted). Factors weighing against amendment include "(1) bad faith, (2) undue delay, (3)
28 prejudice to the opposing party, (4) futility of amendment, and (5) whether plaintiff has

5

previously amended his complaint." *Id.* (quoting *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir.1990)) (internal quotation marks omitted).

The Court explicitly noted in its January 17, 2014, Order that Defendants omitted the three defamation claims from the FAC; however, Plaintiffs did not file leave to amend to reinstate these claims until August 13, 2014, an eight month delay. Defendants argue that delay alone, no matter how lengthy, is insufficient grounds for denying leave to amend. *See Webb v. United States*, 655 F.2d 977, 980 (9th Cir. 1981). However, the Court finds that the Magistrate Judge could have based her ruling on additional grounds, including prejudice to the Defendants and previous opportunities to amend. Indeed, the Court previously denied Plaintiffs' motion to amend in the January 17, 2014, Order for unduly delaying amendment by failing to correct identified deficiencies and for futility of future amendment. Doc. #129 at 12-13. Although the Court may reconsider its prior rulings under Fed. R. Civ. P. 54(b), this is subject to the Court's discretion.

Based on the foregoing, the Court finds that the Magistrate Judge's denial of Plaintiffs' Motion for Leave to Amend their Complaint was not "clearly erroneous or contrary to law." Accordingly, Plaintiffs' Objection is overruled.

**B. Plaintiffs' Motion for Partial Summary Judgment**

Plaintiffs move for summary judgment on their prior restraint claim. The question before the Court is whether Plaintiffs have demonstrated that there is no dispute of material fact that the February 24, 2011, email sent by Tice constituted an unconstitutional prior restraint of Plaintiffs' First Amendment rights. The email states in relevant part:

> Effective immediately, except for allied LE [law enforcement] agencies and HIDTA [high intensity drug trafficking area] representatives, there will be NO direct contact between K9 handlers, or line employees with ANY non-departmental and non-law enforcement entity or persons for the purpose of discussing the Nevada Highway Patrol K9 program or interdiction program, or direct and indirect logistics therein. All communication with ANY non-departmental and non-law enforcement entity or persons regarding the Nevada Highway Patrol K9 program or interdiction program, or direct and indirect logistics relating to these programs WILL be expressly forwarded for approval to your chain-of-command. Communication will be accomplished by the appropriate manager/commander if deemed appropriate. Any violation of this edict will be considered insubordination and will be dealt with appropriately.

(Complaint #1 at ¶ 188.)

Courts evaluate prior restraints of government employee speech through the lens of *Pickering v. Board of Education of Township High School District 205*, 391 U.S. 563 (1968). *United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 466 (1995); *see also Gibson v. Office of Atty. Gen., State of Cal.,* 561 F.3d 920, 926 (9th Cir. 2009). The *Pickering* test requires the court to balance "the interests . . . of a citizen, in commenting on matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 568. Thus, *Pickering* balancing only applies to speech made "as a citizen on a matter of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006).

*Garcetti* addressed the distinction between speech made "as a citizen" and speech made "as an employee." Speech made as an employee is speech that "owes its existence to a public employee's professional responsibilities." *Id*. at 421. Restricting such speech "simply reflects the exercise of employer control over what the employer itself has commissioned or created." *Id*. at 421-22. Thus, if the prior restraint exceeds the scope of regulating speech-as-employee and intrudes on speech-as-citizen, the prior restraint may be subject to *Pickering* balancing. *See Milwaukee Deputy Sheriff's Ass'n v. Clarke*, 574 F.3d 370, 383 (7th Cir. 2009) ("The real dispute in this case is the extent to which the [prior restraint] encompasses speech by an employee as a citizen.").

*Pickering* balancing should accord government employers "wide discretion and control over the management of their personal and internal affairs." *Gilbrook v. City of Westminster*, 177 F.3d 839, 867 (9th Cir. 1999) (citation and quotation marks omitted). On the other hand, "the more tightly the First Amendment embraces the speech, the stronger the showing of workplace disruption must be." *Id*. (internal citation and quotation marks omitted). Factors considered in the balancing have included whether the speech "(1) impaired discipline or control by superiors; (2) disrupted co-worker relations; (3) eroded a close working relationship premised on personal loyalty and confidentiality; (4) interfered with the speaker's performance of his or her duties; or (5) obstructed routine office operations," as well as "(6) whether the speaker directed the statement to the public or the media, as opposed to a governmental colleague; (7) whether the

7

speaker served in a high-level, policy-making capacity; and (8) whether the statement was false or made with reckless disregard of the truth." *Id*. at 867-68 (citations omitted).

Plaintiffs invoke the law of the case doctrine as the basis for granting summary judgment in their favor. Plaintiffs claim that the Court's denial of Defendants' prior motions to dismiss are law of the case and establish that Tice's email was an unconstitutional prior restraint. In evaluating Defendants' prior motion to dismiss on the basis of qualified immunity, the Court considered whether "the outcome of the *Pickering* balance so clearly favors [Plaintiffs] that it would have been patently unreasonable for [Defendants] to conclude that the First Amendment did not protect [Plaintiffs'] speech." Doc. #100 at 10. In denying Defendants' second motion to dismiss, the Court relied on the same reasoning and affirmed that a viable prior restraint claim had been asserted. *See* Doc. #129 at 8-9. The Court also found that Tice was not entitled to qualified immunity at the motion to dismiss stage. *See id.*

The Court agrees with Defendants that denial of motions to dismiss do not constitute law of the case for the purpose of summary judgment. *See Pearson v. Dennison*, 353 F.2d 24, 28 (9th Cir. 1965) (noting that denial of motion is interlocutory and could be renewed and reconsidered at any time prior to final disposition); *Robbins v. Wilkie*, 433 F.3d 755, 764 (10th Cir. 2006), *rev'd on other grounds*, 551 U.S. 537 (2007) (internal quotation marks omitted) ("Law of the case does not apply because a motion to dismiss and a motion for summary judgment do not raise the same issues."). However, the Court may reconsider its preliminary reasoning in light of the totality of the evidence gathered during discovery. *See Robbins*, 433 F.3d at 765.

Thus, the Court now reviews the fully developed record to determine if, viewing the evidence in favor of the non-moving party, no dispute of material fact exists as to whether Tice's email was an unconstitutional prior restraint. Defendants contend that Plaintiffs have not pointed to the specific grounds demonstrating a lack of dispute as to material fact on the prior restraint claim. However, the Court may, at its discretion, consider other materials in the record and is not limited to the points cited by Plaintiffs. Fed. R. Civ. P. 56(c)(3). Because Defendants have filed a cross-motion for summary judgment, the Court also reviews evidence in Defendants' motion to

determine if a genuine issue of material fact is raised therein.[3] *See Fair Hous. Council*, 249 F.3d at 1136.

### 1. Plaintiffs Lee and Yarnall

Defendants argue that Lee and Yarnall have not sufficiently established standing on the prior restraint claim. To demonstrate standing for a 42 U.S.C. § 1983 claim, plaintiffs must demonstrate "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiffs must also establish "a causal connection between the injury and the conduct complained of – the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result of the independent action of some third party not before the court." *Id*.

Defendants argue that Lee and Yarnall were not recipients of Tice's February 24, 2011, email on which their 42 U.S.C. § 1983 claim is based. *See* Doc. #159-1 at 2. This email was sent only to K9 troopers in the southern command; Yarnall was not a K9 trooper and Lee is assigned to the northern command. Plaintiffs counter that the email's text is directed at all "line employees," which would include Lee and Yarnall, and argue that a "reasonable inference exists that Lee was advised of Tice's email" because Lt. McAfee, Lee's superior, read to Lee an email from another officer containing identical language. Doc. #171 at 2. However, standing cannot be "inferred argumentatively from averments in the pleadings," but rather "must affirmatively appear in the record." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (internal citations and quotation marks omitted). An email from another officer containing the same language as an email from Tice does not render Defendants' alleged prior restraint "fairly traceable" to a prior restraint on Lee. Therefore, Lee has failed to demonstrate sufficient causation to establish standing, and the Court denies Plaintiffs' Motion for Summary Judgment as to Lee on his prior restraint claim.

---

[3] Plaintiffs claim that Defendants' failure to assert substantive arguments in the Response to Plaintiffs' Motion for Summary Judgment is consent to the motion under LR 7-2(d). However, in the interest of resolving issues pending before the court, the Court will assess the arguments contained in the record and both parties' Motions for Summary Judgment.

1    Yarnall passed away in early 2015. *See* Doc. #161 at 7. Plaintiffs' counsel does not
2 present any significant counterargument as to Yarnall's standing. Doc. #171 at 2. However, the
3 Court acknowledges that disputed facts may remain on his claim, and Yarnall's successors, if
4 any, should be given opportunity to raise such arguments on his behalf. *See Barlow v. Ground*,
5 39 F.3d 231, 233 (9th Cir. 1994) ("Because of the nonparty's distance from the litigation, it may
6 be that a nonparty will be unaware of the need to act to preserve the claim."). Ruling on Yarnall's
7 standing at this time would thus be equivalent to an improper dismissal of Yarnall's claim under
8 Rule 25(a). The Court only dismisses a claim under Rule 25(a)(1) when, following the death of a
9 party, a motion for substitution of the proper party is not made within 90 days after service of a
10 statement noting the death. Fed. R. Civ. P. 25(a)(1). Defendants note that "[o]n or about February
11 3, 2015, [Defendants' counsel] was informed by [Plaintiffs'] counsel that Donn Yarnall had
12 passed away." Doc. #161 at 7. However, a *formal* suggestion of death of the party must be served
13 upon the record to trigger the ninety day period. *Barlow*, 39 F.3d at 233. Importantly, the
14 suggesting party must also serve other parties and nonparty successors or representatives with
15 notice of the death pursuant to the requirements of Rule 5 and Rule 4, respectively. *Id*; Rule
16 25(a)(3); *see also United States v. Seventy-One Firearms*, No. 3:04-CV-00402-LRH(RAM),
17 2006 WL 1983240, at *2 (D. Nev. July 13, 2006). Here, there is no evidence in the record that a
18 formal statement of death or service of process on opposing counsel and Yarnalls' successors has
19 been issued. Therefore, the Court finds that facts still in dispute preclude a finding of summary
20 judgment for Yarnall on his prior restraint claim.

21    **2. Plaintiff Moonin**

22    The remaining issue before the Court is whether Tice's email unconstitutionally
23 restrained Moonin's speech. As a threshold matter, the Court determines that, as a matter of law,
24 Tice's email restricted speech on a matter of public concern and *Pickering* balancing is
25 appropriate. *See Garcetti*, 547 U.S. at 418. Applying the *Pickering* test, the Court finds Moonin's
26 interest as a citizen "commenting on matters of public concern" outweigh "the interest of the
27 State, as an employer, in promoting the efficiency of the public services it performs through its
28 employees." *See Pickering*, 391 U.S. at 568.

### i. Speech as Citizens on a Matter of Public Concern

First, the Court considers whether Plaintiffs established that Tice's email regulated speech of troopers as citizens on a matter public concern. Plaintiffs' speech would have addressed alleged NHP misuse of funds, encouragement of unconstitutional searches, and the "sabotage" of the K9 program, which are clearly matters of public concern. *See, e.g.*, *Robinson v. York*, 566 F.3d 817, 822 (9th Cir. 2009) ("[T]he competency of the police force is surely a matter of great public concern."). The five televised interviews addressing these subjects provide additional support that these subjects are matters of public concern.

Defendants contend that the intended scope of the restraint was limited to speech that "owes its existence to the troopers' professional responsibilities" and thus should not be subject to *Pickering* balancing as a statement by a citizen on a matter of public concern. *See Garacetti*, 547 U.S. at 421; Doc. #159 at 10-11; Doc. #159-2 at 47-48. However, the email restricts "ANY" contact with non-NHP personnel "for the purpose of discussing the Nevada Highway Patrol K9 program or interdiction program, or direct and indirect logistics therein." The focused "any," combined with the prohibition on "discussing . . . the K9 program," suggests that this restriction applies to speech merely "related to" the K9 program. *See Clarke*, 574 F.3d at 383. In *Clarke*, the Milwaukee Sheriff's employment policy required employees to keep "official agency business" confidential. *Id*. The court held that the composition of "official," "agency," and "business" indicated that the policy only regulated speech "grounded in the public employee's professional duties." *Id*. The court specifically contrasted the regulation of "official" speech–speech "authorized or approved by a proper authority"–with speech "tangentially related to" the department's business. *Id*. *Clarke*'s implication is that a prior restraint on the latter category of speech exceeds the government's authority. Tice's email falls squarely within the ambit of this implication, and thus regulates troopers' speech on matters "beyond which the employer itself has commissioned or created." *Garcetti,* 547 U.S. at 422.

Subsequent clarification of the email does not sufficiently limit the scope of the email's directive to preclude liability for a prior restraint violation. Defendants contend that, at some point after the email was sent, another officer held a meeting with the southern command canine

11

1  troopers, during which he discussed Tice's email and "simply told the troopers to keep
2  departmental business confidential." Doc. #159-1 at 4. Recipients of the email dispute that this
3  meeting occurred. Doc. #171-2 at 3, 5, 12. However, subsequent retraction of an email that was
4  an unconstitutional prior restraint does not moot a claim for damages. *See Crue v. Aiken*, 370
5  F.3d 668, 677 (7th Cir. 2004) (finding that plaintiffs can recover damages on a prior restraint
6  claim even if the message was retracted). Therefore, Tice's email restricted speech made as a
7  citizen on matters of public concern, and *Pickering* balancing is appropriate.

        **ii. Application of *Pickering* Balancing**

9        In balancing the interest of Plaintiffs in commenting on matters of public concern with
10 NHP's interest in providing effective public services, the Court previously found that "[t]he
11 *Pickering* balance . . . weighs in favor of Plaintiffs, and it does so clearly." Doc. #100 at 12. The
12 Court now returns to the issue, reviewing the fully developed record in the light most favorable
13 to the non-moving party, Defendants.

14       Defendants first contend that no actual injury was suffered because the Plaintiffs freely
15 discussed the K9 program with the press despite Tice's email directive. Doc. #159 at 13. This
16 Court has previously ruled that "while a prior restraint 'need not actually result in suppression of
17 speech in order to be constitutionally invalid . . . it must '[authorize] suppression of speech in
18 advance of its expression." *Panning v. Eureka County*., No. 3:10-CV-00643-LRH(VPC), 2012
19 WL 3324197, at *3 (D. Nev. Aug. 13, 2012) *aff'd*, 552 Fed. App'x 740 (9th Cir. 2014) (citing
20 *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1023 (9th Cir. 2008);
21 *Ward v. Rock Against Racism*, 491 U.S. 781, 795 n. 5 (1989)). Here Tice's email expressly
22 authorized the suppression of any speech related to the K9 program. Therefore, that Plaintiffs
23 were not deterred from speaking about the K9 program does not sway the *Pickering* balance in
24 Defendants' favor.

25       Defendants also repeat their contention that Tice's email only enforced the department's
26 confidentiality policy and assert NHP's interest in keeping official business confidential for
27 officer safety and effective departmental operations. Although an employee's violation of a
28 written policy might strengthen the employer's position in the *Pickering* balance, it is not alone

dispositive. *Robinson*, 566 F.3d at 825. Here, as discussed above, Tice's email plainly regulates speech beyond that related to confidential departmental business. Therefore, the departmental policies do not change the analysis under *Pickering*.

Defendants further imply that even if the email constitutes a prior restraint, it was lawful because Nevada's whistleblower laws provide adequate safeguards. In examining the constitutionality of a statutory censorship regime, the Supreme Court held that a system of prior restraint only avoids constitutional infirmity if it takes place under procedural safeguards designed to obviate the dangers of a censorship system. *Se. Promotions, Ltd. v. Conrad,* 420 U.S. 546, 559 (1975) (citing *Freedman v. Maryland*, 380 U.S. 51 (1965)). Nevada's whistleblower laws protect public employee disclosure of government action. NRS 281.631; *see also* Doc. #172 at 6. However, the system of constitutional prior restraint imagined by the Supreme Court required that "the burden of instituting judicial proceedings, and of proving that the material is unprotected, must rest on the censor" and that "any restraint prior to judicial review can be imposed only for a specified brief period and only for the purpose of preserving the status quo." *Id.* at 560. The Court added that "a prompt final judicial determination must be assured." *Id.* None of these procedural safeguards are contemplated by Tice's email. Furthermore, the email itself is not part of a statutory "system" of prior restraint. As such, Tice's email was not a lawful prior restraint.

### 3. Qualified Immunity

Defendants contend that Tice has qualified immunity on this claim. Government officials are immune from suit "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. at 800, 818 (1982)). Generally, the question of qualified immunity is determined by the Court. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). Courts are encouraged to resolve these issues early in litigation so as to eliminate insubstantial claims against government officials. *Pearson*, 555 U.S. at 231-32 (citing *Hunter*, 502 U.S. at 227 (1991)) (internal quotations omitted). However, where there are disputes as to "the facts or circumstances within an officer's knowledge" or "what the officer and claimant did

1   or failed to do," then the qualified immunity determination must be postponed, and the case
2   "must proceed to trial." *Sloman v. Tadlock*, 21 F.3d 1462, 1467 (9th Cir. 1994); *see also A.D. v.*
3   *Cal. Highway Patrol*, 712 F.3d 446, 456 n.6 (9th Cir. 2013). On the other hand, if such facts are
4   not disputed the court must make the "essentially legal" determination of whether a reasonable
5   officer would have thought that his or her conduct violated the plaintiff's constitutional rights.
6   *Sloman*, 21 F.3d at 1467.

7   The Court finds that this case falls into the latter category. In *Sloman*, the Ninth Circuit
8   affirmed the District Court's decision to allow a jury to determine whether an officer was
9   immune from a First Amendment retaliation suit. *Id.* at 1468-69. At dispute in *Sloman* was the
10  defendant police officer's motive; the jury heard evidence that the Plaintiff was not violating
11  laws when the police officer cited him, and that the officer had a strong dislike for the plaintiff's
12  political views. *Id.* By contrast, the facts giving rise to Plaintiffs' prior restraint are not
13  significantly in dispute. Tice acknowledges sending the email mandate, and as this Court
14  determined above, the email was an unconstitutional prior restraint. Unlike in a First Amendment
15  retaliation claim, the subjective intent of a government actor, a relatively fact-intensive inquiry, is
16  not a component of a prior restraint claim. Therefore, the Court, not a jury, is the proper entity to
17  decide whether Tice is entitled to qualified immunity.

18  The question before the Court is whether Tice reasonably could have believed his email
19  was not a violation of Plaintiffs' First Amendment rights. Defendants now lodge several
20  arguments as to the reasonableness of Tice's belief: first, the department's confidentiality policy
21  provided Tice a reasonable basis on which to send his email; second, Tice's superiors directed
22  him to remind the troopers to keep information pertaining to the logistics of the K9 and
23  interdiction programs within the law enforcement community; and finally, the email was justified
24  by the sensitive and highly risky nature of the drug interdiction program. However, none of these
25  items would have given a reasonable police officer a basis to restrict Plaintiffs' speech on "all"
26  matters related to the K9 program. The Court finds that a reasonable supervisor would have
27  known that such a mandate was an unconstitutional intrusion into Plaintiffs' established First
28  Amendment rights, and therefore finds as a matter of law that Tice is not entitled to qualified

1  immunity on this claim.

2  Defendants protest that entering summary judgment for the Plaintiffs would be akin to
3  issuing summary judgment *sua sponte* without affording Defendants an opportunity to respond
4  with opposing material. *See Townshed v. Columbia Operations*, 667 F.2d 844, 849 (9th Cir.
5  1982) ("Plaintiffs should be given reasonable opportunity to respond with opposing material.").
6  Yet Defendants have had ample opportunity to present contradictory evidence in the course of
7  discovery and have issued their own Motion for Summary Judgment on the same claim. Thus,
8  Defendants have had adequate notice to present opposing material.

9  Moonin has thus established the elements of prior restraint, and there is no dispute of
10 material fact that would preclude a finding of summary judgment. Therefore, the Court finds that
11 Moonin is entitled to summary judgment on his prior restraint claim.

12 **C. Defendants' Motion for Summary Judgment**

13 **1. First Amendment Prior Restraint Claim**

14 As noted above, Defendants demonstrated that Lee does not have standing. Therefore, the
15 Court grants summary judgment for Defendants as to Lee's prior restraint claims.

16 The Court finds that, because issues of material fact may remain as to Yarnall's standing,
17 Defendant's Motion for Summary Judgment as to Yarnall's prior restraint claim is denied.

18 For the reasons outlined in the Court's assessment of Plaintiffs' Motion for Partial
19 Summary Judgment, the Court denies Defendants' Motion for Summary Judgment on Moonin's
20 prior restraint claim. Moonin has standing to bring a 42 U.S.C. § 1983 claim, the record
21 demonstrates that Defendants' email restricted speech of a citizen on a matter of public concern,
22 and the *Pickering* balance favors Plaintiff. The Defendants' Motion for Summary Judgment as to
23 Moonin is thus denied.

24 **2. Trespass Claim**

25 To sustain a trespass action, Plaintiffs must show that a property right was invaded. *See*
26 *Lied v. Clark County.*, 579 P.2d 171, 173 (Nev. 1978). No property right was invaded if the
27 invader was acting pursuant to a privileged right of entry. *See Winchell v. Schiff*, 193 P.3d 946,
28 952 (Nev. 2008). However, when a person exercises his privilege to enter land unreasonably, that

person is liable for harm to any legally protected interest caused by the unreasonable conduct. Restatement (Second) of Torts § 214 (1965).

The record establishes the following undisputed facts. After Lee resigned his assignment with the K9 program, the NHP demanded the return of the NHP-owned dog kennel from Lee's property. NHP coordinated with Lee to schedule officers to come to his home, and Lee specifically asked Zapata be present on the day in question. To remove the kennel, NHP officers temporarily dismantled Lee's fence and removed a bush, damaging both in the process. NHP subsequently repaired the fence and replaced the bush.

Zapata had a privileged right of entry to Lee's property. Zapata contends that, although he was present during the kennel removal, he did not personally remove the fence and bush that were damaged; this was the direct action of other NHP troopers under his supervision but not named in this lawsuit. However, Zapata can still be liable for the harm caused by his inferior officers if he knew or should have know of circumstances that would make the conduct tortious if it were his own. Restatement (Second) of Torts § 877.

Thus, there remain questions of fact as to whether the extent of Zapata's entry was reasonable. A reasonable jury could find that the destruction of Lee's property unreasonably exceeded the scope of Zapata's privileged entry and invaded a property right. Restatement (Second) of Torts §198. Under Nevada law, nominal damages may be awarded for trespass even in absence of damage to property. *See Parkinson v. Winniman*, 344 P.2d 677, 678 (Nev. 1959). Punitive damages may also be awarded for willful trespass. *Id.*; *Gerlach Live Stock Co. v. Laxalt*, 284 P. 310, 311 (Nev. 1930) *aff'd on reh'g*, 298 P. 413 (Nev. 1931). Thus, even though NHP replaced the damaged fence and bush, the trespass claim is not moot. The reasonableness of Zapata's actions is a material question for the jury, and therefore, Defendants' Motion for Summary Judgment on Plaintiffs' trespass claim is denied.

### IV. Conclusion

IT IS THEREFORE ORDERED that Plaintiffs' Objection to the Magistrate Judge's Order Denying Leave to Amend (Doc. #139) is OVERRULED.

///

1    IT IS FURTHER ORDERED that Plaintiffs' Motion for Partial Summary Judgment (Doc. #157) is GRANTED in part, and DENIED in part.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment (Doc. #159) is GRANTED in part, and DENIED in part.

IT IS FURTHER ORDERED that Plaintiffs shall file a formal statement of death for Plaintiff Yarnall with the Court within fourteen (14) days of this Order. Pursuant to Rule 25(a)(3), Plaintiffs shall also serve this statement on Yarnall's non-party successor(s) or representative(s) within fourteen (14) days.

IT IS FURTHER ORDERED that the clerk of court shall enter judgment for Plaintiff Moonin on the prior restraint claim and for Defendant Tice on the prior restraint claim brought by Plaintiffs Lee and Yarnall.

IT IS FURTHER ORDERED that the Parties shall file a Joint Pretrial Order pursuant to Local Rules 16-3 and 16-4 within forty-five (45) days of entry of this order.

IT IS SO ORDERED.

DATED this 2nd day of July, 2015.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE