UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MATT MOONIN; DONN YARNALL; and ERIC LEE,<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF NEVADA, et al.,<br><br>Defendant. | 3:12-CV-0353-LRH-VPC<br><br>ORDER |

Before the Court is Plaintiff Matt Moonin's ("Moonin") Motion for Attorney Fees. Doc. #178.[1] Defendant the State of Nevada filed an Opposition (Doc. #183), to which Plaintiffs replied (Doc. #187). Also before the Court is Defendant Tice's Motion for Stay of Order Granting Summary Judgment Against Defendant Tice. Doc. #180.

**I.    Facts and Procedural History**

This dispute concerns the creation and implementation of a canine drug detection unit ("K9 program") within the Nevada Highway Patrol ("NHP"). Plaintiffs filed their original Complaint on June 26, 2012. Doc. #1. Plaintiffs are officers who were formerly involved in the K9 program. Plaintiffs Eric Lee ("Lee") and Moonin are former NHP K9 troopers, and Plaintiff Donn Yarnall ("Yarnall") was the architect of the NHP's K9 program.[2] Defendants are NHP officials. Plaintiffs

---

[1] Refers to the Court's docket number.

[2] Plaintiff Yarnall passed away in early 2015. Doc. #161 at 7.

allege that NHP administrators were against the K9 program from its inception and worked to undermine and marginalize it, resulting in routine Fourth Amendment violations.  Plaintiffs claim that NHP officials retaliated against them for objecting to the alleged mismanagement.

Despite the claimed mismanagement, the K9 program initially flourished, yielding both drug and currency seizures.  Plaintiffs contend that NHP officials sought to replace high standards Yarnall implemented with lower ones.  As part of this effort, NHP officials allegedly filed false complaints against Yarnall and Lee; took files from the K9 program's offices; denied the provision of necessities such as dog food; and issued orders barring dogs from the K9 program's offices.

In 2009, concerned that attempts to decentralize the program and reduce training standards had led to increased Fourth Amendment violations by K9 troopers, Lee and Moonin allege that they alerted NHP officials, but their warnings went unheeded.  When, in late 2009, the NHP officials replaced the K9 program's head, the K9 troopers submitted a letter to the Director of the Department of Public Safety outlining their grievances.  Plaintiffs allege that, following the submission of the letter, NHP officials eliminated the K9 troopers' ability to earn overtime, malingered with respect to renewing Yarnall's contract, and gave Moonin unnecessary tasks.

At the end of 2010, the K9 program's last high-ranking defender, the Director of the Department of Public Safety, retired.  In April 2011, the new Director split the K9 program into two squads, including both NHP officers and Las Vegas Metropolitan Police Department ("LVMPD") officers.  During the following summer, Plaintiffs allege that they observed a marked increase in unconstitutional searches.  In particular, Moonin was alarmed at the routine practice of poking holes in packages at a FedEx sort facility so that K9 program dogs could more easily smell the packages' contents.  Moonin reported this practice, but his reports did not result in any changes.

At least five televised interviews with members of NHP and LVMPD occurred over the course of late 2011 and early 2012, centering on the challenged searches and the implosion of the K9 program.  Rumors spread that Moonin was the media's source.  Moonin denied these rumors, but he contends that they caused him significant grief.  Moonin claims that NHP and LVMPD

employees ramped up their harassment, and Moonin eventually filed a complaint with NHP's Office of Professional Responsibility.  Moonin also requested a transfer out of his squad, but his request was not successful.  In September 2011, the NHP's K9 troopers—including Moonin and Lee—resigned en masse from the K9 program.  They cited their objections to the training methods as well as the alleged civil rights violations.  Moonin and Lee were placed in lower-status positions within the NHP, where they remain.

Plaintiffs and Defendants each filed Motions for Summary Judgment in early 2015.  Doc. #157; Doc. #159.  Defendants state that Tice presented Moonin with an offer of judgment in the amount of $74,999.99 on May 13, 2015, but that this offer was considered rejected because Moonin never responded.  Doc. #183 at 5.  In a July 8, 2015, Order, the Court granted Plaintiffs' Motion for Summary Judgment as to Moonin's First Amendment Claim.  Doc. #173 at 15.  The Court specifically found that Tice was not entitled to qualified immunity.  *Id.* at 13-15.  Although the Court found that Tice was liable for a violation of Moonin's First Amendment rights, damages have not yet been determined.  Moonin filed his Motion for Attorney Fees on July 22, 2015.  Doc. #178.  Tice filed his Motion to Stay on August 7, 2015.  Doc. #180.

**II.     Discussion**

   **A.     Motion to Stay**

Defendant Tice seeks stay of this action as he appeals the Court's denial of his qualified immunity defense.  Tice notes that a court's denial of qualified immunity constitutes an immediately appealable final order.  Indeed, the Ninth Circuit has held that a district court's denial of a state defendant's qualified immunity defense is "immediately appealable" and that filing of the notice of appeal "divests the district court of jurisdiction to proceed with trial."  *Chuman v. Wright*, 960 F.2d 104, 105 (9th Cir. 1992).  However, the district court is not divested of jurisdiction based on "a frivolous or forfeited appeal."  *Id.*  Thus, upon a state defendant's filing of a notice of appeal for denial of a qualified immunity defense, the trial is "automatically delayed" unless the district court "certif[ies] in writing that the appeal is frivolous or waived."  *Id.*

On July 8, 2015, the Court granted summary judgment in favor of Moonin on his First Amendment claim after finding that Tice is not entitled to qualified immunity as a matter of law. Doc. #173 at 13-15.  The Court believes this to be correct, but finds nevertheless that Tice's appeal is not frivolous or forfeited.  Accordingly, the Court grants Defendant Tice's Motion to Stay pending the Ninth Circuit's decision.[3]

### B.   Motion for Attorney Fees

The Ninth Circuit has made clear that when a party files a notice of appeal concerning the merits of a case, "a district court in this circuit retains jurisdiction to rule upon a request for attorney fees." *League of Women Voters of Cal. v. FCC*, 751 F.2d 986, 990 (9th Cir. 1985).  Tice argues, however, that it is premature to consider Moonin's Motion for Attorney Fees because it is not clear that he is the "prevailing party."  The statute regarding attorney fees in cases filed to vindicate civil rights under 42 U.S.C. § 1983 authorizes courts to award attorney fees to the "prevailing party."  42 U.S.C. § 1988(b).  The Federal Rules of Civil Procedure provide that a plaintiff may not recover costs and attorney fees—and in fact must pay costs and attorney fees—if the plaintiff rejects a settlement offer by the government and "the judgment that the offeree finally obtains is not more favorable than the unaccepted offer."  Fed. R. Civ. P. 68(d); *see Marek v. Chesney*, 473 U.S. 1, 9 (1985) (finding for the purposes of Rule 68 that costs includes attorney fees); *Family PAC v. Ferguson*, 745 F.3d 1261, 1264-65 (9th Cir. 2014) (interpreting *Marek*).  The Supreme Court described the rationale for this rule: "In a case where a rejected settlement offer exceeds the ultimate recovery, the plaintiff—although technically the prevailing party—has not received any monetary benefits from the postoffer services of his attorney." *Marek*, 473 U.S. at 11.

Defendant states that on May 13, 2015, Tice presented Moonin with an Offer of Judgment in the amount of $74,999.99, but that Moonin never responded, thereby effectively rejecting the

---

[3] On August 25, 2015, the Court entered a stipulation and order that the parties shall file their joint pretrial order thirty days after the Ninth Circuit rules on Tice's qualified immunity appeal.  Doc. #189.  The parties stipulated that although Plaintiff Lee's trespass claim survived summary judgment, "the parties do not want to try that claim separately and the parties wish to avoid wasting judicial resources." *Id.* at 2.

offer.  Although the Court granted summary judgment in favor of Moonin on his First Amendment claim, damages have not yet been determined.  Tice is correct that Rule 68 indicates that the Court cannot determine whether Moonin is the "prevailing party" for the purposes of an award of attorney fees until damages are determined.  Accordingly, the Court denies Moonin's Motion for Attorney Fees without prejudice.  Moonin shall re-file any motion for attorney fees if, after damages have been determined, he is the prevailing party under Rule 68.

### III. Conclusion

IT IS THEREFORE ORDERED that Defendants' Motion to Stay (Doc. #180) is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Attorney Fees (Doc. #178) is DENIED without prejudice.

IT IS FURTHER ORDERED that pursuant to the Court's August 25, 2015, stipulation and order (Doc. #189), the parties shall file a joint pretrial order within thirty (30) days of the Ninth Circuit Court of Appeal's order on qualified immunity.

IT IS SO ORDERED.

DATED this 9th day of September, 2015.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE